**Robert Lee MERIDYTH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–03–00344–CR.**

Court of Appeals of Texas, El Paso.

April 28, 2005.

306

J. Roxane Blount, Odessa, TX, for Appellant.

John W. Smith, District Attorney, Odessa, for State.

Before Panel No. 5 BARAJAS, C.J., CHEW, J., and JOHN HILL, C.J. (Ret.), sitting by assignment.

## OPINION

JOHN HILL, Chief Justice (Ret.).

Appellant Robert Lee Meridyth appeals his conviction by a jury of the offense of possession of a controlled substance, cocaine, in an amount of less than one gram. The court, citing Appellant's two prior felony convictions, assessed his punishment at ten years in the Texas Department of Criminal Justice, Institutional Division. Appellant contends in three issues that the trial court abused its discretion by overruling his motion to suppress, that the trial court erred by overruling his objection to an argument by the State that was a comment on his right not to testify, and that he received ineffective assistance of counsel when his trial attorney, who confessed error and incompetence, failed to object to the admission of a crack pipe and crack cocaine. We affirm.

■■■ Appellant contends in Issue One that the trial court abused its discretion by overruling his motion to suppress. In reviewing the trial court's ruling on a motion to suppress, we give almost total deference to a trial court's determination of historical facts and review de novo the trial court's application of the law of search and seizure. Carmouche v. State, 10 S.W.3d 323, 327 (Tex.Crim.App.2000). Where, as here, the trial court makes no finding of historical fact, we review the evidence in a light most favorable to the trial court's ruling, assuming that the trial court made implicit findings of fact supported in the record that buttress its conclusion. Id. at 327–28.

■■■ In determining whether the record supports a trial court's decision, we generally consider only evidence presented at the suppression hearing because the ruling was based on it rather than the evidence introduced later. Rachal v. State, 917 S.W.2d 799, 809 (Tex.Crim.App. 1996). However, when the alleged error is the admission of evidence at trial and the issue was consensually litigated there, we will consider the evidence to have been re-opened. Barley v. State, 906 S.W.2d 27, 31 n. 2 (Tex.Crim.App.1995). At trial, Appellant presented through the testimony of his brother, without any objection by the State, evidence that was pertinent only to the subject of the issue of standing. The State cross-examined Appellant's brother concerning these matters. We hold that the issue was re-opened at trial. Therefore, in ruling on Appellant's issue, we will consider evidence relating to standing that was presented both upon the hearing on the motion and during the trial.

■■■ The State's sole argument in support of the trial court's ruling is that Appellant lacked standing to challenge the search. The definition of Appellant's rights under the Fourth Amendment are more properly placed in substantive Fourth Amendment law than in the concept of standing. Rakas v. Illinois, 439 U.S. 128, 140, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978). In order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he or she personally has an expectation of privacy in the place searched and that the expectation is reasonable. An accused lacks standing to challenge the admission of evidence obtained in searching an area respecting which he or she does not have a legitimate expectation of privacy. Id. at 143, 99 S.Ct. at 430; Calloway v. State, 743 S.W.2d 645, 651 (Tex.Crim.App.1988). Texas cases continue to discuss this con-

cept using the language of standing. The Texas Court of Criminal Appeals has held that the movant in a pretrial motion to suppress bears the burden not only of establishing the illegality of the search and seizure of evidence, but also of showing that he or she had standing to contest the search and seizure by establishing that he or she had a reasonable expectation of privacy in the premises searched. *Granados v. State*, 85 S.W.3d 217, 222–23 (Tex. Crim.App.2002), *cert. denied*, 538 U.S. 927, 123 S.Ct. 1578, 155 L.Ed.2d 321 (2003). Under either wording, Appellant had the burden of showing that he had a reasonable expectation of privacy in the premises searched.

■ The factors that we are to consider in determining whether an accused has standing, or a reasonable expectation of privacy, to challenge the search include: (1) whether the alleged aggrieved person has a property or possessory interest in the thing seized or the place searched; (2) whether he was legitimately on the premises; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, prior to the search, he took normal precautions customarily taken by those seeking privacy; (5) whether the property was put to some private use; and (6) whether the claim of privacy is consistent with historical notions of privacy. *Calloway*, 743 S.W.2d at 651.

At the hearing on the motion to suppress, the State presented evidence showing that officers with the Texas Department of Public Safety, the Federal Drug Enforcement Administration, as well as local officers, were engaged in a narcotics investigation. It was originally their intention to stop a motor vehicle, but that did not happen. Officers were advised by radio to "hit the house," which was located in Odessa. Acting without a warrant, officers went probably 50–75 yards off the public roadway on private property to the point where they encountered Appellant. While standing outside the barn on the property, they encountered three males inside the barn and ordered them to sit down and let them see their hands. Appellant made overt movements and put his hands behind his back. At that point, the officers recovered a crack pipe that Appellant was trying to hide in the hay. After handcuffing and arresting Appellant, they found one rock of cocaine in the brim of his hat. At the hearing on the motion to suppress, David Meridyth, Appellant's brother, testified that Margaret Leyva owns the property in question, and that he leased the property from her. He indicated that no one produced a search warrant prior to entering on his property nor obtained his consent to make a search on the premises. David indicated that Appellant was working for him as a groomer or stall cleaner on the day of Appellant's arrest. David testified at trial that Appellant was living on the property, that he had possessions in the house, and that he enjoyed the usage of the property just as if it was his. He indicated that he would have stated that Appellant lived there in the suppression hearing if he had been asked. When asked what he put up to keep people from coming into the barn and barn area, David testified, "Well, I built, it is a gate on the front and it is made of screen that I keep it locked." He emphasized that the barn was immediately adjacent to the property where the house is and that there were no open fields. David related that the property was about 200′ by 200′, or approximately an acre.

Evidence was presented showing that Appellant was a guest of his brother on the premises, without any ownership interest or any formal possessory interest. Evidence was presented showing that the property seized was in his possession. Ap-

pellant was shown to be legitimately on the premises, but we do not believe that the evidence that he enjoyed the usage of the property "just as if it was his" is conclusive evidence that he had complete dominion and control over the premises or the right to exclude others. He had the cocaine hidden in his hat, and had the crack pipe with him in the barn near the main house prior to the search. As previously noted, Appellant was attempting to hide it just prior to his arrest. The premises were being put to a private use and Appellant's brother, the lessee, had taken steps seeking to insure its privacy. Appellant has failed to demonstrate that his claim of privacy is consistent with historical notions of privacy. We hold that the trial court did not abuse its discretion by overruling Appellant's motion to suppress.

Appellant relies in part upon the cases of *Bower v. State*, 769 S.W.2d 887 (Tex. Crim.App.1989) and *State v. Peyrani*, 93 S.W.3d 384, 387 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd). We find those cases to be distinguishable because in each of those cases the defendant was the owner of the property where the officers conducted their search. *Bower*, 769 S.W.2d at 896–97; *Peyrani*, 93 S.W.3d at 387. Appellant was a guest and an employee of the lessee of the property. Appellant's brother David, as the lessee of the home, had a reasonable expectation of privacy in the home and its curtilage that society is willing to recognize. *United States v. Vega*, 221 F.3d 789, 795 (5th Cir.2000). Assuming that Appellant was an overnight guest as well as an employee, Appellant had a reasonable expectation of privacy in the home. *Minnesota v. Carter*, 525 U.S. 83, 90, 119 S.Ct. 469, 473, 142 L.Ed.2d 373 (1998). We know of no authority, however, that would extend the guest or employee's expectation of privacy in the home to the outbuildings or curtilage of the premises, as opposed to the home itself. There-

fore, considering all of the facts as we have enumerated them, we find that the right of an overnight guest or employee to a reasonable expectation of privacy in the outbuildings of a home, or the curtilage of the home, especially in the absence of evidence that such guest or employee controls and exercises dominion over the outbuilding or curtilage, or has the right to exclude others from those premises, has never been recognized as a reasonable expectation of privacy that society is willing to recognize. Meridyth has cited us to no opinion in support of the recognition of such an expectation of privacy, and we are not aware of any. Accordingly, we overrule Issue One.

 Meridyth argues in Issue Two that the trial court erred by overruling his objection to an argument by the State that was a comment on his right not to testify. To determine if a prosecutor's comment violated article 38.08 and constituted an impermissible reference to an accused's failure to testify, we must consider whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily consider it to be a comment on the failure of the accused to testify. Tex.Code Crim. Proc. Ann. art. 38.08 (Vernon 2005); *see Bustamante v. State*, 48 S.W.3d 761, 765 (Tex.Crim.App.2001); *Fuentes v. State*, 991 S.W.2d 267, 275 (Tex.Crim.App.1999). The offending language must be viewed from the standpoint of the jury, and the implication that the comment referred to the accused's failure to testify must be clear. *Bustamante*, 48 S.W.3d at 765. It is not sufficient that the language might be construed as an implied or indirect allusion to the accused's right to remain silent. *Patrick v. State*, 906 S.W.2d 481, 490–91 (Tex.Crim.App.1995).

The prosecutor argued, "There has been no controverting evidence that the cocaine marked as State's Exhibit 2 was found in defendant's hat brim. None whatsoever. Nobody got up there and said, 'No, it is mine.' 'No, it is not cocaine.' Nothing. The only evidence you have before you—." At that point Appellant's counsel objected to the argument as an improper argument on the defendant's failure to testify. The prosecutor responded that he was just telling the jury that there was no evidence that the items in question were not found on the defendant. Appellant's counsel responded, "He said nobody got up on the stand and testified, no, it wasn't—." The trial court then overruled Appellant's objection and instructed counsel to stay within the record.

Under the facts before us, there were others besides Appellant who could have testified as to whether the substance found was cocaine, and as to whether it was found in his hat brim, or as to whether the cocaine was theirs. Consequently, as seen from the jury's standpoint, there is no showing that the language used was manifestly intended or was of such character that the jury would naturally and necessarily consider it to be a comment on the failure of the accused to testify. Any implication that the argument referred to Appellant's failure to testify was not clear.

Appellant argues that he would have to be the one to say that the drug was his because he was the only one of the three persons there who was in possession of a drug. However, the hat could have belonged to one of the others present or they might have put their cocaine in Appellant's hat without his knowledge. We overrule Issue Two.

Appellant insists in Issue Three that he was afforded ineffective assistance of counsel when his attorney failed to object to the admission of the crack pipe and co-caine into evidence. We apply a two-pronged test to ineffective assistance of counsel claims. *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App. 1999). First, Appellant must show that his counsel's performance was deficient; second, Appellant must show the deficient performance prejudiced the defense. *Wiggins*, 539 U.S. at 521, 123 S.Ct. at 2535; *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. A defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness and prevailing professional norms at the time of the alleged error. *Wiggins*, 539 U.S. at 521, 123 S.Ct. at 2535; *Strickland*, 466 U.S. at 688–89, 104 S.Ct. at 2065. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 814. Our scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable. *Id.* at 687, 104 S.Ct. at 2064. In

other words, Appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694; 104 S.Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. *Id.* at 697, 104 S.Ct. at 2070.

Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision making as to overcome the presumption that counsel's conduct was reasonable and professional. *Bone v. State,* 77 S.W.3d 828, 833 (Tex. Crim.App.2002). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *Id.*

When the State introduced the crack pipe and the cocaine into evidence, Appellant's counsel stated that he had no objection. After the State rested its case, Appellant's counsel pointed out his failure to object to evidence of crack cocaine and confessed error and incompetence. Counsel then was permitted to make his objections to the introduction of the crack pipe and cocaine. The trial court did not rule on his objections. We have already held that the trial court did not abuse its discretion in denying Appellant's motion to suppress because the trial court could reasonably have determined that the Appellant lacked the showing of a reasonable expectation of privacy required to support his claim of an illegal search and seizure. Consequently, there was no basis for an objection at the time the exhibits were introduced based upon an illegal search and seizure. Therefore, counsel was not ineffective for failing to make such an ob-

jection, and Appellant has failed to show that the result of the trial would have been different had counsel made such an objection. Appellant argues that not objecting to such evidence if the court sustained his motion to suppress and found there was a violation of his rights was not predicated on trial strategy. However, the trial court overruled, rather than sustained, Appellant's motion to suppress, and we have upheld the trial court's ruling. We overrule Issue Three.

The judgment is affirmed.