Criminal Case Template








COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



EDELMIRO ZUNIGA, JR.,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-04-00344-CR

Appeal from the

346th District Court

of El Paso County, Texas

(TC# 20040D01675)




O P I N I O N

           Appellant appeals his jury conviction of possession of cocaine in the amount of
greater than four grams but less than two hundred grams. The indictment also alleged two
prior felony convictions. The jury found the enhancements true and assessed punishment at
thirty years’ imprisonment. We affirm the judgment of the trial court.
I. SUMMARY OF THE EVIDENCE
           On January 27, 2004, after having found out that Appellant was in violation of the
conditions of his bond for an unrelated robbery charge, Edward Dwyer, co-signor for
Appellant’s bond, contacted Jorge Medina of Aida’s Bail Bonds. Dwyer advised Medina that
Appellant was at his apartment, and that he wished to have Appellant arrested so that he
would not be liable for the $5,000 bond. Dwyer arranged to meet Medina at a Diamond
Shamrock near his apartment. Medina then contacted the El Paso Police Department,
advised them that there was an arrest warrant on Appellant, and requested the presence of
police officers to effectuate the arrest, as he was not certified to do so. Officers Miguel
Pacheco and Victor Caro initially met Medina and Dwyer at the Diamond Shamrock. The
officers verified the warrant, and called for back up from Officers Carlos Lespron and Carlos
Alvarado. Dwyer told the officers about the layout of his apartment, what Appellant was
wearing, and then led the officers to his apartment.
           Upon reaching the apartment, Dwyer opened the door, stepped aside, and allowed the
officers to enter his apartment. After entering, they saw Appellant standing in front of and
directly over the sink in the bathroom with the door open. Officer Caro testified that
Appellant’s position was within arm’s reach of the sink, and Officers Pacheco and Lespron
testified that Appellant’s position would have allowed him to reach any object on the sink. 
Officer Pacheco testified that the officers identified Appellant, advised him that he had an
outstanding warrant for his arrest, and commanded Appellant to come toward them. 
Appellant submitted to the officers and walked toward them, at which point he was
handcuffed. Officers Pacheco and Lespron testified that only a small distance of possibly
ten to fifteen feet separated the bathroom from the living room where Appellant was
handcuffed. Officer Pacheco conducted a pat-down search incident to the arrest, and
discovered a small plastic bag containing a white powder which tested positive for cocaine.
           Officer Caro testified that after the substance was found on Appellant’s person, Dwyer
also consented to a search of his apartment for contraband; although, it is unclear when this
consent was given. Officer Caro then entered the bathroom and found another plastic bag
of cocaine and cocaine paraphernalia, consisting of a spoon with a white powdery residue,
and a burnt pipe sitting on top of the sink, both of which were in plain view.
           At trial, Dwyer testified that he never gave permission to the officers to enter his home
and that he had explicitly instructed them to wait outside the apartment while he escorted
Appellant to the door for them. Dwyer said that Appellant was not in the bathroom at all, but
rather had been in the living room. Further, Dwyer testified that the officers never entered
the bathroom and that they came down the hallway with the bags of cocaine already in their
possession. Dwyer said that he had been friends with Appellant for seventeen years and that
Appellant was “a real good guy.” Dwyer said he believed the police officers involved in the
case were lying and framing Appellant.
           Contradictory to Dwyer’s testimony, Officers Caro and Pacheco testified that while
at the Diamond Shamrock, Dwyer gave explicit consent to the officers to enter his apartment
to search for and arrest Appellant. They also testified that Dwyer’s conduct in leading them
to the apartment, opening the door, and stepping aside did not at any time indicate any
unwillingness to allow them access. Officers Lespron and Alvarado testified that from the
briefing they received on their arrival at the Diamond Shamrock and from Dwyer’s
cooperative manner, their understanding was that consent had been given. Medina, the bail
bondsman, similarly testified that he understood that Dwyer gave consent and that he did not
hear Dwyer object to the entry into the home or tell the officers to stop during the search.
           At the hearing held on Appellant’s motion to suppress evidence, the trial court denied
the motion on the basis that there was a valid warrant existing, the officers had a right to be
at the location at that particular time, the apartment was not Appellant’s personal place of
abode, so he did not have a reasonable expectation to privacy in that location, and Dwyer
provided access to the apartment for the officers.
II. DISCUSSION
           In the sole issue presented for review, Appellant asserts the court erred by denying his
motion to suppress the evidence as the search exceeded the scope of consent given to the
police officers. We review a trial court’s ruling on a motion to suppress using the bifurcated
standard articulated in Guzman v. State, 955 S.W.2d 85 (Tex. Crim. App. 1997). See
Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Krug v. State, 86 S.W.3d
764, 765 (Tex. App.--El Paso 2002, pet. ref’d). We do not engage in our own factual review
because at a suppression hearing, the trial judge is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given to their testimony. See State v. Ross,
32 S.W.3d 853, 855 (Tex. Crim. App. 2000); Romero v. State, 800 S.W.2d 539, 543 (Tex.
Crim. App. 1990). The trial court may choose to believe or disbelieve part or all of any
witness’s testimony, even where the testimony is not controverted. Ross, 32 S.W.3d at 855. 
We give almost total deference to the trial court’s ruling on (1) questions of historical fact
and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and
demeanor. Johnson v. State, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); Best v. State,
118 S.W.3d 857, 861-62 (Tex. App.--Fort Worth 2003, no pet.). We review de novo a trial
court’s rulings on mixed questions of law and fact if they do not turn on the credibility and
demeanor of witnesses. Johnson, 68 S.W.3d at 652-53.
           Initially, we must respond to the State’s contention that Appellant lacks standing to
challenge the search because he failed to establish his status as an overnight guest and failed
to prove that he had a reasonable expectation of privacy.
           In determining whether the record supports a trial court’s decision, we generally
consider only evidence presented at the suppression hearing because the ruling was based on
it rather than the evidence introduced later. Meridyth v. State, 163 S.W.3d 305, 308 (Tex. 
App.--El Paso 2005, no pet.); Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). 
However, when the alleged error is the admission of evidence at trial and the issue was
consensually litigated at trial, we will consider the evidence to have been re-opened. Rachal,
917 S.W.2d at 809; Barley v. State, 906 S.W.2d 27, 31 n.2 (Tex. Crim. App. 1995);
Meridyth, 163 S.W.3d at 308. At trial, Appellant presented testimony from Dwyer without
any objection by the State, that Appellant had been staying at Dwyer’s apartment, which was
pertinent only to the subject of the issue of standing. The State cross-examined Dwyer
concerning these matters. We hold that the issue was re-opened at trial. Therefore, in ruling
on Appellant’s issue, we will consider evidence relating to standing that was presented both
upon the hearing on the motion to suppress and during the trial. See Meridyth, 163 S.W.3d 
at 308.
           The Supreme Court has stated that one’s “status as an overnight guest is alone enough
to show that he had an expectation of privacy in the home that society is prepared to
recognize as reasonable.” Minnesota v. Olson, 495 U.S. 91, 96-97, 110 S.Ct. 1684, 1688,
109 L.Ed.2d 85 (1990). However, it is not enough for Fourth Amendment protection that the
person is aggrieved by an illegal search and seizure only by the introduction of damaging
evidence obtained in a search of a third person’s premises or property. Rakas v. Illinois, 439
U.S. 128, 134-35, 99 S.Ct. 421, 425-26, 58 L.Ed.2d 387 (1978). An accused has standing
to contest a search under the Fourth Amendment only if he had a legitimate expectation of
privacy in the place that government officials or agents invaded. Granados v. State, 85
S.W.3d 217, 222-23 (Tex. Crim. App. 2002).
           A defendant bears the burden of demonstrating a legitimate expectation of privacy. 
He can do so by establishing that he had a subjective expectation of privacy in the place
invaded that society is prepared to recognize as reasonable. Several factors are relevant to
determining whether a given claim of privacy is objectively reasonable: (1) whether the
accused had a property or possessory interest in the place invaded; (2) whether he was
legitimately in the place invaded; (3) whether he had complete dominion or control and the
right to exclude others; (4) whether, prior to the intrusion, he took normal precautions
customarily taken by those seeking privacy; (5) whether he put the place to some private use;
and (6) whether his claim of privacy is consistent with historical notions of privacy. This list
of factors is not exhaustive, however, and none is dispositive of a particular assertion of
privacy; rather, we examine the circumstances surrounding the search in their totality. Id.
at 223; Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).
           At the suppression hearing, Dwyer testified that Appellant was not living at his
apartment but that he “came around to clean the place and do my laundry.” When asked if
Appellant had spent the night on the day before he was arrested, Dwyer said that he did. 
When asked if Appellant had spent several nights there, Dwyer answered that Appellant had
“spent some time when we were doing the wash and cleaning up the place. He wasn’t there
all the time. I’m not supposed to have anyone else there. It’s against management. It’s just
for me. It’s a studio apartment.” When asked if Appellant had any personal belongings in
the apartment, Dwyer replied, “Well, he had a few shirts and things like that. We would go
and do the laundry together. It wasn’t much. . . . . We were going to do the laundry
together.” He had a razor and a toothbrush at the apartment. At trial, however, Dwyer
testified that Appellant had been staying at his apartment for a little over a week. Dwyer also
testified that Appellant had referee shoes, referee shirts, two razors, and a toothbrush at the
apartment.
           At the close of evidence at the hearing on the motion to suppress, the court ruled, in
part, that, “There has been testimony that Mr. Dwyer initiated the call and requested the
officers be there to execute a fugitive warrant and number four, this is not his personal place
of abode so I don’t believe he has got a reasonable expectation to privacy in that location
since it’s not his.”
           The notion that an overnight guest has a reasonable expectation to privacy was
premised upon certain observations about social custom, including that, among other things,
the houseguest and his possessions “will not be disturbed by anyone but his host and those
his host allows inside” and that “[t]he houseguest is there with the permission of his host.” 
Granados, 85 S.W.3d at 223-24; Olson, 495 U.S. at 96. The overnight guest doctrine thus
assumes that the guest is present with the host’s permission when a government intrusion
occurs, and that the guest must accept the reality that the host will permit others to intrude. 
Granados, 85 S.W.3d at 224. It has been suggested that when, for example, the host chooses
to allow others, such as police, inside, or when the houseguest no longer has the permission
of his host to be on the premises, the guest’s expectation of privacy diminishes. Id.
           The trial court may choose to believe or disbelieve part or all of any witness’s
testimony, even where the testimony is not controverted. Ross, 32 S.W.3d at 855. The trial
court’s ruling relied heavily on the evaluation of Dwyer’s demeanor and credibility as a
witness. It was reasonable for the trial court to disbelieve the conflicting testimony of Dwyer
to the effect that Appellant had been an overnight guest in his apartment. This is further
emphasized by the fact that Dwyer called the bail bondsman in order to effectuate
Appellant’s arrest. “[A]n overnight guest’s expectation of privacy is affected by the host’s
ability to control the use of the premises and the period of time that a guest will be permitted
to stay.” Granados, 85 S.W.3d at 225. It was realistic for the trial court to believe that even
if Appellant had been a guest in the apartment, the duration of his stay expired when Dwyer
arranged to have him arrested and thereby removed from his home. It was within the trial
court’s discretion to rule that Appellant did not have a reasonable expectation of privacy in
the apartment, and therefore lacked the requisite standing to challenge the search and seizure. 
Accordingly, Appellant’s sole issue on appeal is overruled.



           Having overruled Appellant’s sole issue on review, we affirm the judgment of the trial
court as reformed.
 
                                                                  RICHARD BARAJAS, Chief Justice

August 31, 2006

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)