**Affirm; Opinion Filed January 27, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00002-CR

**ANGEL RIVERA III, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 282nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F16-71649-S**

## MEMORANDUM OPINION

Before Justices Myers, Osborne, and Nowell
Opinion by Justice Myers

A jury convicted appellant Angel Rivera III of sexual assault of a child and assessed punishment at eight years' imprisonment. In four issues, he alleges the trial court improperly limited his cross-examination of the complainant, that his Fifth Amendment rights were violated, and that the trial court erred by overruling his hearsay objections to testimony from the complainant's mother. We affirm.

### DISCUSSION

### I. Limits on Cross-Examination

In his first and second issues, appellant contends the trial court improperly refused him permission to explore, during his cross-examination of the complaining witness, two prior statements that were allegedly inconsistent with her trial testimony. The State argues appellant's

issues were not preserved or that, alternatively, he failed to lay the proper predicate.

The record shows the complainant played basketball on her school team and that appellant was a private athletics coach hired by the complainant's family to improve her athletic skills. The indictment alleged that on or about August 29, 2016, appellant intentionally and knowingly caused the penetration of the complainant's female sexual organ with his finger, and that the complainant was then a child younger than seventeen years of age.

The first alleged prior inconsistent statement concerned whether the complainant removed her leggings during a sports massage that appellant gave her on August 24, 2016, and the second focused on whether she removed her shorts during the instant sexual assault on August 29, 2016. These statements form the basis for appellant's first two issues. Appellant argues that, outside the jury's presence, he made clear there were two prior inconsistent statements he wanted to explore with the witness, and that, despite his explanation of the inconsistencies, the trial court denied him permission to lay the predicate for impeachment of the witness.

The discussion between the court and the parties began with defense counsel inquiring about an alleged inconsistency between the complainant's trial testimony in which she stated that appellant, upon being "snapchatted" a photo of the complainant in a robe, told her to "[o]pen the robe," and a September 1, 2016 affidavit the complainant provided to the police (State's exhibit 49), according to which appellant said, "Looks like you're in a robe, yummy." The line of questioning began like this:

> Q. [DEFENSE COUNSEL:] And you told this Jury that, at one time during this whole situation, you said that you Snapchatted a photograph of yourself in a robe to the defendant and you said that he immediately Snapchatted back to you, open it up?
>
> A. [THE COMPLAINANT:] Open the robe.
>
> Q. Open the robe. And you're pretty sure that's exactly what he said?
>
> A. 100 percent sure.

Defense counsel also cross-examined the complainant as follows:

Q. [DEFENSE COUNSEL:] . . . . I'm going to show you a document that's labeled to be an affidavit.

A. [THE COMPLAINANT:] Yes.

Q. And I'm going to ask you, if you would, in regards to the portions that I have highlighted there in pink, if you would just go through and read that to yourself. You can't read it out loud, but just to refresh your memory about what you— whether or not you actually ever told the police that. Now again, I'm not allowed to read from these documents because they're not evidentiary. I'll ask you again, is it not, in fact, correct that you never made that statement before you came into this courtroom today?

A. I did make that statement before I came in this courtroom today.

Q. Who did you make it to?

A. The police in my affidavit which you just showed me.

Q. You're saying that, in that affidavit, you're saying the defendant told you to open the robe?

A. Yes. Looks like you're in a robe, yummy.

Q. Where does open the robe come from, Ma'am? You're quoting that as a direct statement. You've told the Jury now three times that 100 percent sure—

A. I am 100 percent sure that—I wrote that affidavit over two years ago.

Q. Well, I understand, but when you're in here telling this Jury now things that you're saying are 100 percent true, and I just showed you that, that was in fact not true, and now you're saying, well it says something else, but I think that's what it means, you understand that words have meaning in a courtroom?

A. Yes, I do. I understand.

Q. And you understand that when you sat there and talked and interviewed with this prosecutor on three separate times, that your stories changed to the prosecutor with significant details on three separate occasions and that they've been forced by the rules of evidence to turn over those discrepancies to me? Did you know that every time you told her something that—

A. Yes. I'm aware that evidence has to be handed over. I'm aware of that.

Q. And that, when you sit down and meet with her and you tell her something that's different—

[STATE:]: Your Honor, I'm going to object. The defendant needs—the Defense

needs to show her what he is talking about before he just blurts out that her story has been changed.

[DEFENSE COUNSEL]: I just did, Your Honor.

[THE STATE]: You showed her a police report.

THE COURT: Attorneys approach. [Court reporter], this will be on the record.

The trial court and the parties then held a conference about defense counsel's cross-examination of the complainant. The conference initially took place outside the jury's hearing, but the court eventually excused the jury. During the hearing that followed, defense counsel read to the court the following "*Brady* notice" regarding the two prior inconsistent statements made by the complainant.

> I made my work products available to the defense from interviews conducted with [the complainant] on 5-9-18, 9-14-18, 9-24-18. I emailed the defense lawyer, to Phillip Hayes, who was the attorney at the time. I informed him of inconsistent statements made by confronting witness regarding whether she had bottoms, leggings, or shorts during massages that defendant gave her. During my interviews on 5-9—and I think it's [a] typo. It says 5-9-15 but I believe it's meant to be 5-9-18 and 9-14-18 from [the complainant] says she was wearing leggings during the first massage and she was wearing shorts during the second massage. During my interview with [the complainant] on 9-24-18, I showed her a witness statement that she wrote on September of 2016 where she admitted that she took off her leggings for the first massage, took her shorts for the second massage, then stated she had forgotten about taking her clothes off, but remembered after viewing her statement.

The discussion between the court and counsel continued, and defense counsel made the following argument regarding the two inconsistent statements:

> [DEFENSE COUNSEL]: In her testimony to the Jury, Your Honor, she testified that she pulled her leggings down past her knees. In those notes, she says she took them off. That's an inconsistency even though—
>
> THE COURT: Okay. So that is circled.
>
> [DEFENSE COUNSEL]: The second one, she said that she didn't say she had taken—removed her shorts. She said she had pulled them down.
>
> THE COURT: Let's make sure that we know what date she said this because that's what is required for you to run through it with her as a prior inconsistent statement. So you all know the dates of these things, these last two things that were referenced, the leggings and then the shorts? Let's make sure we know that.

–4–

[THE STATE]: So your issue is whether the leggings were off.

[DEFENSE COUNSEL]: 5-9-18 and 9-14-18 were the times that she said that they were off, that they were on. And on 9-24-18, she admitted that they were off and she had taken them off.

Toward the end of the hearing, defense counsel summarized his argument as follows:

[DEFENSE COUNSEL]: Your Honor, if the Court would look back at the testimony, all of my questioning in regards to this statement goes to her assertion, 100 percent that the defendant made this quote, and that she has testified that 100 percent she has told people that quote. And I would ask the Court to also consider the entirety of Defendant's Exhibit Number 1 which consists of all the interviews that she has done with the State of Texas and the Exhibit Number 49 that the Court is now considering. And nowhere, in any of these exhibits, does it ever make reference to her stating that the defendant responded to her, open the robe. And that has a specific meaning. It is not a general attack on her statement. It is a question about one assertation [sic] of fact and one assertation [sic] of fact alone. And the Court can read—has read the document. It is not in there. The Court can look at Defendant's Exhibit Number 1. It is not in there. And to say well, we're going to offer this as a consistent statement, it's not consistent. In fact it proves the inconsistency.

THE COURT: Okay. At this point, you all have identified the inconsistencies. And State, you've asked, and pursuant to 613, you are allowed to ask to look at and identify what areas of the statement Counsel was referencing. We've done that. Both sides are satisfied that you understand what sections we're referencing now?

[THE STATE]: Yes, Your Honor.

THE COURT: Okay, perfect. *Now as far as State's request under 801 and defendant's now request under 801, both requests are denied at this time* [emphasis added]. But I would caution both of you that 801E1B is still fair game. So if you all go into making certain arguments, you may open the door for a prior consistent statement to come in. So just be aware of that. So let's bring in the complaining witness and we're going to bring the panel back too.

BAILIFF GRANT: All rise.

(Jury enters 1:50 p.m.)

Appellant argues on appeal that he should have been allowed to cross-examine the complainant about the prior inconsistent statements pertaining to leggings and shorts, and for support he cites rule 613 of the rules of evidence. He further complains that he did not fail to "establish a predicate for admitting extrinsic evidence of [the complainant's] prior inconsistent

statements—for the simple reason that [he] was not even allowed to try and establish the predicate itself." Appellant also argues that "the trial court appeared to accept that the inconsistencies were real," and that "[o]nce the inconsistencies were established, the trial court erred in refusing to allow Appellant to continue to lay the foundational predicate required by Rule 631."

However, even if we assume appellant's first two issues were preserved for appellate review, he has failed to show an abuse of discretion. We review the trial court's decision to admit or exclude evidence for abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). We will uphold the court's ruling if it lies within a zone of reasonable disagreement, and we will affirm under any theory of law applicable to the case. *Page v. State*, 213 S.W.3d 332, 337 (Tex. Crim. App. 2006).

Regarding prior inconsistent statements made by witnesses, rule 613 provides in part:

(a) Witness's Prior Inconsistent Statement.

(1) Foundation Requirement. When examining a witness about the witness's prior inconsistent statement—whether oral or written—a party must first tell the witness:

    (A) the contents of the statement;

    (B) the time and place of the statement; and

    (C) the person to whom the witness made the statement.

(2) Need Not Show Written Statement. If the witness's prior inconsistent statement is written, a party need not show it to the witness before inquiring about it, but must, upon request, show it to opposing counsel.

(3) Opportunity to Explain or Deny. A witness must be given the opportunity to explain or deny the prior inconsistent statement.

(4) Extrinsic Evidence. Extrinsic evidence of a witness's prior inconsistent statement is not admissible unless the witness is first examined about the statement and fails to unequivocally admit making the statement.

(5) Opposing Party's Statement. This subdivision (a) does not apply to an opposing party's statement under Rule 801(e)(2).

Tex. R. Evid. 613(a).

In this case, appellant did not establish the predicate for impeaching the complainant with any prior inconsistent statements. Defense counsel argued to the trial court that the complainant "interviewed with this prosecutor on three separate times, that [the complainant's] stories changed to the prosecutor with significant details on three separate occasions[,]" and that the complainant told the prosecutor "something that's different." But this did not inform the complainant of the time, place, and contents of the statements, as appellant was required to do in order to question her about those statements. *See, e.g., Maya v. State*, No. 05–14–00486–CR, 2015 WL 4627218, at *3 (Tex. App.—Dallas Aug. 4, 2015, pet. ref'd) (mem. op., not designated for publication) ("[T]here are three requirements to establish the proper predicate or foundation for impeachment testimony: (1) identification (time and place and person to whom the statement was made); (2) the contents of such statement; and (3) the witness must be afforded an opportunity to explain or deny such statement."); *see also Flowers v. State*, 438 S.W.3d 96, 103 (Tex. App.—Texarkana 2014, pet. ref'd); *Sale v. State*, No. 05–16–00360–CR, 2017 WL 2492613, at *3 (Tex. App.—Dallas June 9, 2017, pet. ref'd) (mem. op., not designed for publication). Appellant simply did not establish the necessary predicate, nor does he not cite a passage in the record that shows he did. As for appellant's assertion that he did not fail to establish the predicate because he was "not even allowed to try and establish the predicate itself," the trial court's ruling cannot reasonably be construed as forbidding *any* discussion of the complainant's prior statements. The trial court stated that it was denying appellant's request "at this time." The court left open the possibility appellant could question the complainant if he established the proper predicate—something he ultimately failed to do. We conclude no abuse of discretion has been shown, and we overrule appellant's first issue.

## II. Right to Remain Silent

In his third issue, appellant contends the trial court abused its discretion in overruling appellant's objection to the statement of the police detective that appellant's attorney prevented

appellant from answering the detective's questions.

During the direct examination of Dallas Police Department Detective Jason Paulson, the following occurred:

Q. [THE STATE:] So after you spoke with [the complainant] and her mom on the day that they came into the police station, what happened after that?

A. [DET. PAULSON:] I attempted to—we did—that night, we did a one-party consent phone call to Coach Rivera. He did not answer. But the following day, they came back in and we completed the phone call. From there, I attempted to contact [appellant] to interview him, but I was contacted by his attorney where he—

[DEFENSE COUNSEL]: Judge, I'm going to object to this.

THE COURT: I couldn't hear you, Counsel.

[DEFENSE COUNSEL]: I'm sorry. I said I object to this line of questioning and request to approach the bench.

THE COURT: Come on up.

(At the bench, on the record.)

[DEFENSE COUNSEL]: Judge, I'm going to object to the State going into the defendant's exercising his Fifth Amendment rights.

THE COURT: Okay.

[DEFENSE COUNSEL]: And State—I don't know—I might—my position is that the State shouldn't ask the question or ask him to explain that he did that. And it's a violation of his Constitutional rights and we're going to move for a mistrial.

THE COURT: State, your response?

[THE STATE]: I didn't actually hear the defendant's objection. What did you say?

[DEFENSE COUNSEL]: That he brought up the defendant invoked his Fifth Amendment rights.

[THE STATE]: So he said he called him, didn't speak to him, and then his lawyer called—

[DEFENSE COUNSEL]: And said he was invoking his Fifth Amendment rights.

[THE STATE]: Did he say that?

[DEFENSE COUNSEL]: I stopped him in the middle of it, but that's clearly what was being said. I didn't want to—I was—I was not going to allow the record to be

completely contaminated. I mean the State knows the answer.

[THE STATE]: Did he—

THE COURT: What would the rest of that have been? He said the next day, he was contacted by the lawyer where he did what?

[DEFENSE COUNSEL]: He told him that he was exercising his Fifth Amendment.

THE COURT: Oh, that's what the attorney said to the detective?

[DEFENSE COUSEL]: Yes.

THE COURT: What did the Detective say—

[THE STATE]: No, he didn't say anything. He said—

[DEFENSE COUNSEL]: I stopped him and I got him to stop, but [the] Jury still has the clear impression that, that's—I mean, I'm not going to.

THE COURT: He said, "where he" — that's where he stopped him. He stopped at "where he".  He said, "I got a phone call from the defense attorney the next day where he—"

[DEFENSE COUNSEL]: Right.

THE COURT: And then—we'll move on from there, okay.

[DEFENSE COUNSEL]: I need to make a motion outside the presence of the jury at this time.

THE COURT: Okay. Outside the presence. This is why I don't tell y'all times.

[DEFENSE COUNSEL]: I'm sorry?

THE COURT: Nothing. Sheriff, let's take the panel out.

BAILIFF GRANT: All rise.

(Jury exits at 3:15 p.m.)

The trial court and the attorneys continued their discussion after the jury was excused.  The court

ultimately overruled the defense's objection and its request for a mistrial, concluding:

> The record shows the answer was, "I attempted to. We did that night. We did a one-party consent phone call to [appellant]. He did not answer, but the following day, they came back in and we completed the phone call. From there I attempted to contact [appellant] to interview him, but I was contacted by his attorney where he —" And so I'm going to overrule Counsel's objection and deny your request for a

mistrial. Sheriff, let's get the panel back in.

It is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police interrogation. *Hardie v. State*, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991). "The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." *Miranda v. Arizona*, 384 U.S. 436, 468 n. 37 (1966). To violate the right against self-incrimination, the offending language must be viewed from the jury's standpoint and the implication that the comment referred to the defendant's silence must be clear. *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001). It is insufficient that the language might be construed as an implied or indirect allusion to the accused's Fifth Amendment right to remain silent. *Meridyth v. State*, 163 S.W.3d 305, 310 (Tex. App.—El Paso 2005, no pet.) (citing *Patrick v. State*, 906 S.W.2d 481, 490–91 (Tex. Crim. App. 1995)). "The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Bustamante*, 48 S.W.3d at 765.

Appellant argues that "Detective Paulson's answer undeniably implied he could not get any responses from Appellant because Appellant's attorney would not let the detective ask Appellant any questions," and that "the jury was left with the clear implication that Appellant's consciousness of guilt prevented him from answering any questions." But the record shows that the detective never finished his sentence. Indeed, as defense counsel told the court: "I stopped him in the middle of it, but that's clearly what was being said. . . . I was not going to allow the record to be completely contaminated. I mean the State knows the answer." Moreover, even if the State knew the answer to its question, the jury did not. And the offending language must be viewed from the jury's standpoint. *See Bustamente*, 48 S.W.3d at 765. Therefore, it is far from clear whether Detective Paulson was referring to appellant's silence, and his partial comment could

be viewed as only an implied or indirect reference to appellant's silence, which is insufficient to constitute a violation of appellant's Fifth Amendment rights. *See Patrick*, 906 S.W.2d at 490–91; *Meridyth*, 163 S.W.3d at 310. We conclude the trial court did not abuse its discretion in overruling the defense's objection, and we overrule appellant's third issue.

### III. Hearsay

In his fourth issue, appellant argues the trial court wrongly admitted hearsay testimony designed to establish the specific pretrial bond conditions imposed by the trial court on appellant.

The complainant's mother testified at punishment that appellant had violated his pretrial bond conditions, and this testimony drew a series of hearsay objections from the defense. The State asked her if at some point she learned that the trial court had ordered appellant not to reach out to children on social media, at which point defense counsel objected that this testimony violated rule 802 of the rules of evidence. During a bench conference, the trial court asked the State if it could lay the "foundation" for the witness's knowledge "before you get to what she knows the conditions were." The State resumed its direct examination as follows:

> Q. [THE STATE:] Did you attend a couple of hearings regarding Angel Rivera?
>
> A. [THE WITNESS:] I attended a hearing in May of 2018 regarding Coach Rivera. I also routinely checked the Court's website.
>
> [DEFENSE COUNSEL]: Excuse me, Judge. It's nonresponsive.
>
> THE COURT: Overruled.
>
> [THE STATE]: Yes.
>
> THE WITNESS: May I continue? And in reviewing—excuse me—what was available on the Court's website, I saw that there had also been a hearing in the fall of 2017.
>
> [DEFENSE COUNSEL]: Excuse me, Judge. This is a violation of Rule 802.
>
> THE COURT: It's nonresponsive so I'm going to sustain it and ask your next question, State.
>
> Q. [THE STATE:] Okay. Did you happen to review the Court's website?

A. I did.

Q. On the Court's website, did you learn that there was a bond set?

[DEFENSE COUNSEL]: Excuse me, Judge. That's a violation of Rule 802.

THE COURT: Overruled.

Q. [THE STATE:] You saw a public record; is that correct?

A. That's right. I—I would routinely look at the Court's website to see what was publicly available about what was going on. There were included—included on the Court's website, were docket minutes from a hearing. And those docket minutes made it very clear that Coach Rivera had been instructed not to continue to pursue training for minors on his own behalf or on behalf of anyone else, any other trainers. The Court had been very explicit in the notes—

[DEFENSE COUNSEL]: Excuse me, Judge. This is a violation—

THE WITNESS: —on the website.

[DEFENSE COUNSEL]: This is nonresponsive. It's narrative, and it's a violation of Rule 802.

THE COURT: Overruled as to your objection regarding 802. State, next question.

After testifying that she learned about some of appellant's pretrial bond conditions by reviewing the court's public website, the State asked the complainant's mother if "those conditions that you saw were not to post to children on social media?" Defense counsel objected that this question was leading, and the State replied it was trying to lay the foundation for what the witness saw. The trial court said it was clear the witness had been looking at the court's website and asked the State to get to the next question, at which point the complainant's mother explained how she had discovered appellant was violating his bond conditions by following his Facebook posts on social media:

Q. [THE STATE:] I'm showing you what's marked as [STATE'S EXHIBITS] 68, 69, 70, and 71. Do you recognize these Facebook posts?

A. [WITNESS:] Yes, Ma'am, I do.

Q. And what do you recognize them as?

A. Those are posts by Manny Rivera who is the same individual as Angel Rivera.

And I believe I may have taken all or most of those screen shots.

Q. And provided them to the State?

A. Provided them to the State.

[THE STATE]: Tendering State's Exhibits 68 through 71 to defense.

[DEFENSE COUNSEL:] No objection.

THE COURT: State's 68, 69, 70, and 71 are all admitted.

[THE STATE]: Permission to publish, Your Honor?

THE COURT: You may.

Q. [THE STATE:] [Witness], were these posts found after you saw on the Court's public website informing the defendant not to post on social media under his name or for any other purposes?

A. That is correct. That's exactly when I noticed that.

* * * *

Q. [THE STATE:] So look at State's Exhibit 70. Again, whose picture is it that we see on State's Exhibit Number 70?

A. [WITNESS:] This picture is also—it's the same as the previous ones. It is of Angel Rivera, III now going by Manny Rivera, III.

Q. And the company has changed to?

A. Amp Up Performance Training.

Q. Do you know if he was still operating out of the same location on Judd Court?

A. I believe that's the case.

Q. Now, this is after the Court has informed him that he cannot have contact with minors; is that correct?

A. That's right.

Q. But on this post—

A. Could I back up a minute?

Q. Yeah.

A. So the original bond condition said no contact with minors. The defendant actually sought to modify his bond conditions so he could work with children. That

was denied by the Court. I know that. I reviewed it on the website so that was probably available.

[DEFENSE COUNSEL]: It's excuse, Judge. A violation of Rule 802. It's nonresponsive, and it's a narrative.

THE COURT: Overruled as to 802. State, next question.

To preserve error in admitting evidence, a party must make a timely and proper objection and obtain a ruling. TEX. R. EVID. 103(a)(1); TEX. R. APP. P. 33.1(a). The party must object each time inadmissible evidence is offered or obtain a running objection. *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004); *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003). "[E]rroneously admitting evidence 'will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.'" *Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) (quoting *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)); *see also Estrada v. State*, 313 S.W.3d 274, 302 n. 29 (Tex. Crim. App. 2010) (any error was harmless in light of "very similar" evidence admitted without objection). Thus, error in the admission of evidence may be rendered harmless when substantially the same evidence is admitted elsewhere without objection. *See Leday*, 983 S.W.2d at 717–18.

Appellant argues his substantial rights were affected by improperly admitting evidence that he could not follow the trial court's orders. He claims this punishment-stage error had the reasonable possibility of signaling to the jury that appellant would not be a good candidate for probation—based on the complainant's mother's perception of what she thought the bond conditions were, not the actual public record. However, the record in this case shows that after lodging several hearsay objections to testimony from the complainant's mother that referred to appellant's pretrial bond conditions, similar evidence was offered without timely objection. The complainant's mother agreed with the State that the trial court had ordered appellant not to post on social media under his name or for any other purpose, and she also agreed that the trial court

–14–

informed appellant that he could not have contact with minors. Both of these statements occurred without timely objection from the defense, and appellant did not obtain a running objection or a ruling on his complaint during a hearing outside the jury's presence. Accordingly, any error in the admission of the complainant's mother's testimony regarding appellant's pretrial bond conditions was harmless. *See Coble*, 330 S.W.3d at 282. We overrule appellant's fourth issue.

/Lana Myers/

LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
190002F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANGEL RIVERA III, Appellant

No. 05-19-00002-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F16-71649-S.
Opinion delivered by Justice Myers.
Justices Osborne and Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 27th day of January, 2020.