Opinion issued June 26, 2008












In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-07-00178-CR
 

 
 
GARY WAYNE WEAVER, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 182nd District Court
Harris County, Texas
Trial Court Cause No. 1061792
 

 
 
O P I N I O N

          Following trial, a jury convicted appellant, Gary Wayne Weaver, of aggravated
robbery,


 and the trial court assessed punishment at life imprisonment. On appeal,
appellant presents six issues: (1) whether the evidence supporting the verdict is legally
and factually sufficient; (2) whether the warrantless search of the apartment at which
he was a guest was illegal; (3) whether his confession was illegally obtained due to
interrogating officers’ misrepresentations; (4) whether he should have been brought
before a magistrate prior to being interrogated by police; (5) whether the trial court’s
refusal to allow the jury to assess punishment denied him procedural due process; and
(6) whether his counsel was ineffective. We affirm.
Background
          On May 14, 2006, the Houston Police Department (“HPD”) began investigating
a body found under an overpass bridge. A driver’s license found on the decedent
identified him as Ramesh Cherukumalli. At trial, the medical examiner testified that
Cherukumalli died from multiple gunshot wounds.
          During their investigation, officers questioned and took the written statement
of Christina Dewitt. Dewitt lived at an apartment complex on Red Bluff in Pasadena,
Texas. Dewitt consented to a search of her apartment and purse, in which officers
discovered Cherukumalli’s identification card and vehicle title.
          After the officers questioned Dewitt, appellant became a person of interest to
the investigation. HPD informed Pasadena Police Department Officer Joseph Phillips
that a warrant had been issued for appellant’s arrest. Officer Phillips knew appellant
from previous encounters and knew that he often visited Dewitt’s apartment. Officer
Phillips arrived at Dewitt’s apartment around 5:20 p.m., looked through the window,
and saw appellant lying on a pallet, apparently asleep. After back-up arrived, Officer
Phillips knocked on the front door. Appellant answered wearing only boxer shorts and
was arrested. Officer Phillips entered the apartment and retrieved appellant’s clothing
and wallet. Cherukumalli’s Bank of America debit card was found in appellant’s
wallet. Officer Phillips notified HPD, and appellant was turned over to Investigator
Steven R. Straughter at HPD headquarters. 
          Investigator Straughter and Sergeant Robert Torres interrogated appellant for
about an hour and 45 minutes. After first strenuously denying involvement, appellant
finally confessed to Cherukumalli’s murder. He told police that he and Dewitt
kidnapped Cherukumalli at Dewitt’s apartment by tying him up and placing him in the
trunk of a car. After renting rooms at a hotel, Dewitt stayed with Cherukumalli at the
hotel while appellant went to use Cherukumalli’s debit cards. Appellant stated that
the debit cards did not work because Cherukumalli gave Dewitt the wrong pin
numbers. Appellant also confessed that he took cash from Cherukumalli’s wallet,
some of which Dewitt later used to buy drugs. When appellant returned, they placed
Cherukumalli back in the car and drove to an area underneath a bridge. Appellant
stated that he wanted to let Cherukumalli go, but that Dewitt wanted to kill him
because he knew her. 
          During the interrogation, officers asked appellant what type of gun he “used.” 
Appellant responded that he used a “chrome gun” and, without specifically saying that
he shot Cherukumalli, stated, “I’ve already said I did it, huh, so I might as well say
M515 .22 Magnum.” He told the officers that he had since traded the gun for crack. 
Appellant also admitted that he used Cherukumalli’s Bank of America debit card
about 15 times at various convenience stores, and that he burned Cherukumalli’s car.
          Appellant was charged with capital murder for intentionally causing
Cherukumalli’s death while in the course of committing or attempting to commit the
robbery and/or kidnapping of Cherukumalli, and the State sought the death penalty. 
At trial, appellant entered a plea of not guilty and he testified that his confession to
police was false and that he did not participate in Cherukumalli’s murder. He told the
jury that it was Dewitt and two men known as “D-Ray” and “Northside” who were
involved in the shooting. His counsel requested and were granted an instruction on
the lesser included offense of aggravated robbery. The jury found appellant guilty of
aggravated robbery and the trial court assessed punishment at life imprisonment. 
Appellant now brings the following issues on appeal.
Legal and Factual Sufficiency
          In his first issue, appellant argues that the evidence was legally and factually
insufficient to support the aggravated robbery verdict. He argues that the evidence,
at most, merely shows that he was present when Cherukumalli was shot.
Standard of Review
          In our legal-sufficiency review, we view the evidence in the light most favorable
to the verdict and ask whether any rational trier of fact could have found the crime’s
essential elements beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000). In our factual-sufficiency review, we view all of the evidence in
a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). We will
set aside the verdict only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the proof of guilt is against the great weight and
preponderance of the evidence. Johnson, 23 S.W.3d at 11. Under the first prong of
Johnson, we cannot conclude that a conviction is “clearly wrong” or “manifestly
unjust” simply because, on the quantum of evidence admitted, we would have voted
to acquit had we been on the jury. Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim.
App. 2006). Under the second prong of Johnson, we also cannot declare that a
conflict in the evidence justifies a new trial simply because we disagree with the jury’s
resolution of that conflict. Id. Before finding that evidence is factually insufficient
to support a verdict under the second prong of Johnson, we must be able to say, with
some objective basis in the record, that the great weight and preponderance of the
evidence contradicts the jury’s verdict. Id. In our factual-sufficiency review, we must
also discuss the evidence that, according to appellant, most undermines the jury’s
verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
          The fact-finder alone determines the weight to be given contradictory
testimonial evidence because that determination depends on the fact-finder’s
evaluation of credibility and demeanor. Cain, 958 S.W.2d at 408–09. As the
determiner of the credibility of the witnesses, the fact-finder may choose to believe all,
some, or none of the testimony presented. Id. at 407 n.5; see also Lancon v. State, No.
0182-07, 2008 WL 2081638, at *6–7 (Tex. Crim. App. May 14, 2008).
Analysis
          To convict appellant of aggravated robbery, the jury had to find that he
committed robbery and either caused serious bodily injury to another or used or
exhibited a deadly weapon. See Tex. Penal Code Ann. § 29.03. 
          Additionally, appellant could have been found guilty of aggravated robbery as
a party to the offense if the jury found that he, with the intent to promote or assist the
commission of the offense, solicited, encouraged, directed, aided or attempted to aid
the others to commit the offense. See Tex. Penal Code Ann. §§ 7.01; 7.02(a)(2)
(Vernon 2003). Accordingly, we interpret appellant’s first issue to be that the
evidence is legally and factually insufficient to support his conviction for aggravated
robbery, either as a principal or as a party to the offense, because appellant contends
the evidence merely shows he was merely present during the commission of the crime. 
Appellant mischaracterizes the evidence against him.
          For example, appellant contends that the record provides no evidence he knew
a weapon would be used to rob Cherukumalli. In support of this argument, appellant
directs us to his testimony at trial, where he admitted that he drove Dewitt, D-Ray,
Northside, and Cherukumalli to the location of the shooting, but in which he also
testified that he was smoking crack throughout the incident. Appellant also claimed
he was ignorant of any plan to shoot Cherukumalli and that he actually told
Cherukumalli to run before he was shot.



          However, in addition to appellant’s trial testimony, the jury also heard evidence
regarding appellant’s confession that he and Dewitt put Cherukumalli in the car and
appellant drove to the location underneath the bridge. While appellant did not
expressly state that he shot Cherukumalli, and he actually stated that he was going to
let Cherukumalli go, he did admit that he “did it” and that he used a “chrome gun” at
some point during the crime.
          Appellant’s confession was also corroborated by independent evidence at trial. 
A criminal conviction cannot be based upon a defendant’s extrajudicial confession
unless the confession is corroborated by independent evidence tending to establish the
corpus delicti. Trejos v. State, 243 S.W.3d 30, 56 (Tex. App.—Houston [1st Dist.]
2007, pet. ref’d). Some evidence, independent of appellant’s statements, must show
that the crime actually occurred, though the independent evidence does not have to
identify the defendant as the culprit. Salazar v. State, 86 S.W.3d 640, 644-45 (Tex.
Crim. App. 2002). The corroborating evidence need not prove the underlying offense
conclusively; all that is required is that some evidence makes the commission of the
offense more probable than it would be without the evidence. Cardenas v. State, 30
S.W.3d 384, 390 (Tex. Crim. App. 2000). At trial, evidence showed that
Cherukumalli’s body was found underneath a bridge with gunshot wounds, and
Cherukumalli’s debit card was found in appellant’s wallet. Accordingly, appellant’s
confession was corroborated by independent evidence establishing the corpus delicti. 
Cf. Rivera v. State, 89 S.W.3d 55, 57 (Tex. Crim. App. 2002). 
          Appellant’s corroborated confession is some evidence that he participated in
Cherukumalli’s shooting as a principal.


 We hold that the evidence is legally
sufficient to support appellant’s conviction beyond a reasonable doubt and that he was
more than merely present when Cherukumalli was shot. Furthermore, the evidence is
factually sufficient, because the jury was free to believe all, some, or none of the
testimony presented, and could have chosen to believe appellant’s corroborated
extrajudicial confession and ignored his exculpatory trial testimony. See Cain, at 407
n.5.
          We overrule appellant’s first issue.               
Suppression of Evidence
          Appellant’s second, third, and fourth issues deal with the admission of evidence
at trial. Our standard for reviewing a trial court’s ruling on a motion to suppress
evidence is bifurcated; we give almost total deference to a trial court’s determination
of historical facts and review de novo the court’s application of the law. Maxwell v.
State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). In reviewing a ruling on a
question of the application of law to facts, we review the evidence in the light most
favorable to the trial court’s ruling. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997). At a suppression hearing, the trial court is the sole and exclusive trier of
fact and judge of the witnesses’ credibility. Maxwell, 73 S.W.3d at 281. Accordingly,
the trial court may choose to believe or to disbelieve all or any part of the witnesses’
testimony. State v. Ross, 32 S .W.3d 853, 855 (Tex. Crim. App. 2000).
Legality of Search
          We interpret appellant’s second argument to be that the trial court erred in
refusing to grant his motion to suppress the evidence resulting from the illegal search
of Dewitt’s apartment. See U.S. Const. amends. IV, XIV; Tex. Const. art. I, § 9.
          We first consider whether appellant has standing to challenge the legality of the
police officers’ search of Dewitt’s apartment. The burden to prove standing to
challenge the legality of the search rests with the defendant. Granados v. State, 85
S.W.3d 217, 223 (Tex. Crim. App. 2002). To have such standing, a defendant must
show that he had an actual, subjective expectation of privacy, exhibited by measures
taken to protect the privacy of the property in question, which society is prepared to
recognize as reasonable. Id. at 222–23. In considering whether appellant has
demonstrated an objectively reasonable expectation of privacy, we look at the totality
of the circumstances including, but not limited to: (1) whether he had a property or
possessory interest in the place invaded; (2) whether he was legitimately in the place
invaded; (3) whether he had complete dominion or control and the right to exclude
others; (4) whether, prior to the intrusion, he took normal precautions customarily
taken by those seeking privacy; (5) whether he put the place to some private use; and
(6) whether his claim of privacy is consistent with historical notions of privacy. Id.
at 223.
          During the motion to suppress, the State argued that the search was legal and
that appellant lacked standing to challenge the search. The trial court denied the
motion to suppress evidence stemming from the search, but did not make explicit
findings of facts or conclusions of law explaining its factual or legal basis in denying
the motion. Under these circumstances, we imply the necessary fact findings that
would support the trial court’s ruling if the evidence, viewed in the light most
favorable to the trial court’s ruling, supports these implied fact findings. State v.
Kelly, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006). We will uphold the ruling on any
theory of law applicable to the case. Ross, 32 S.W.3d at 856. We review the trial
court’s legal ruling de novo unless the supported-by-the-record implied fact findings
are also dispositive of the legal ruling. Kelly, 204 S.W.3d at 819. When the trial
court’s determination on a suppression issue turns on the credibility and demeanor of
a witness, we give “almost total deference” to the trial court’s ruling. Ross, 32 S.W.3d
at 856.
          In arguing that he had a reasonable expectation of privacy in Dewitt’s
apartment, appellant relies primarily on caselaw expressing that an overnight guest
has an expectation of privacy in the house where he is staying. See, e.g., Minnesota
v. Carter, 525 U.S. 83, 88–90, 119 S. Ct. 469, 473–74 (1998). To support his status
as an overnight guest at Dewitt’s apartment, appellant points to testimony given at
both the suppression hearing and during trial.
          Appellant first directs us to Officer Phillips’s testimony that he knew to look
for appellant at this specific apartment, and that he found appellant asleep in the
apartment when he arrived to arrest him. Because this testimony was given during
the suppression hearing, we consider it in our review. See Rachal v. State, 917
S.W.2d 799, 809 (Tex. Crim. App. 1996).
          Appellant also relies on his testimony at trial that he had a key to the apartment,
which was given after he had re-urged his motion to suppress at the end of the State’s
case-in-chief. While implied findings are generally limited to evidence produced at
the suppression hearing because the trial court’s ruling was based on it rather than
evidence introduced later, this general rule is inapplicable when the parties
consensually re-litigate the suppression issue during the trial on the merits. Gutierrez
v. State, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007); Rachal, 917 S.W.2d at 809. 
When the parties have made an election to reopen the evidence, consideration of the
relevant trial testimony is appropriate in our review. Gutierrez, 221 S.W.3d at 687;
Rachal, 917 S.W.2d at 809. Here, the parties “consensually re-litigated” the issue of
appellant’s standing to challenge the search of Dewitt’s apartment when appellant
testified on issues related to his standing without objection from the State, and the
State cross-examined appellant concerning the same issues. See Meridyth v. State,
163 S.W.3d 305, 308 (Tex. App.—El Paso 2005, no pet.). Therefore, we also
consider this testimony in our review.
          In light of the totality of the circumstances, we conclude that appellant did not
prove he had a reasonable expectation of privacy in the apartment on the day of his
arrest. Appellant was putting the apartment to some private use by napping there.
However, there is no evidence that Dewitt had given appellant permission to spend
the night at the apartment on the day of his arrest. See Granados, 85 S.W.3d at 225
(expressing the general rule to be “that the defendant must establish that he had
permission to be on the premises on the occasion of the search at issue”). The fact
that he was asleep in the apartment at around five o’clock in the afternoon does not
establish his status as an overnight guest. Moreover, that Officer Phillips knew to
look for appellant at Dewitt’s apartment merely indicates appellant frequented the
apartment, but is not conclusive evidence of his privacy interest in the apartment. We
recognize that, at trial, appellant testified that he had been staying at the apartment
for several weeks, had a key to the apartment, and was told to “hang out” at the
apartment by Dewitt on the day of the arrest. However, the trial court, as judge of
demeanor and credibility, could have chosen to not believe appellant’s
unsubstantiated testimony. See Ross, 32 S.W.3d at 855. Without appellant’s self-serving testimony, the evidence does not show that he had any other property or
possessory interest, was legitimately in the place invaded, had complete dominion
with the right to exclude others, took normal precautions customarily taken by those
seeking privacy, or his claim of privacy is consistent with historical notions of
privacy. Granados, 85 S.W.3d at 223. Accordingly, appellant lacks standing to
challenge the legality of the officers’ search of Dewitt’s apartment. We hold that the
trial court did not err in denying appellant’s motion to suppress the evidence
stemming from the search of Dewitt’s apartment.
          We overrule appellant’s second issue.
Police Interrogation
          We interpret appellant’s third issue to be that the trial court erred by not
suppressing his confession, because the police interrogators used illegal tactics in
obtaining the confession. Appellant contends that, during the approximately hour and
45 minute interview, interrogating officers deceived him and refused to inform him
of the charges he faced, while he repeatedly denied involvement in Cherukumalli’s
death or in the burning of Cherukumalli’s car.
          A statement of an accused may be used in evidence against him if it appears
that the same was freely and voluntarily made without compulsion or persuasion. 
Tex. Code Crim. Proc. Ann. art. 38.21 (Vernon 2005). Whether a statement is
voluntary is a mixed question of law and fact. Garcia v. State, 15 S.W.3d 533, 535
(Tex. Crim. App. 2000). Misrepresentations made by the police to a suspect during
an interrogation are relevant factors in assessing whether the suspect’s confession was
voluntary, but are insufficient to render an otherwise voluntary confession
inadmissible. Green v. State, 934 S.W.2d 92, 99 (Tex. Crim. App. 1996). The
misrepresentations must be viewed in the context of the totality of their
circumstances. Id. The focus is on whether the behavior of the State’s law
enforcement officials was such as to overbear the will of the accused and bring about
a confession not freely determined. Id. at 99–100. Of the numerous types of police
deception, a misrepresentation relating to an accused’s connection to the crime is the
least likely to render a confession involuntary. Id. at 100.
          Appellant contends that the illegal tactics used by the officers during his
interrogation induced him to make a false confession after he repeatedly denied
involvement in the crime. He asserts that the officers never gave him a clear answer
on what charges were asserted against him, even though he asked several times. He
also complains that the officers misrepresented that (1) witnesses saw him commit the
crime, (2) his fingerprints were found, and (3) a videotape showed his involvement
in the crime. Officer Straughter admitted at the suppression hearing that the police
did not know if fingerprints had been found and he testified at trial that lying is a
common and accepted police tactic during interrogation and stated that police did not
know if there were cameras at the hotel.


 Finally, appellant argues that one of the
officers made false promises. After inquiring as to appellant’s age, the officer told
appellant he had his whole life ahead of him, even though the officer knew appellant
was charged with capital murder. Additionally, when discussing appellant’s drug use,
the officer stated, “You know what if this just happened when you, you know you
might had been doing something you didn’t realize what you were doing, that’s fine! 
There’s nothing wrong with that . . . .” Appellant appears to contend that, by making
this statement, the officer was falsely promising that appellant would not face legal
consequences if he committed the crime while under the influence of an illegal
substance.
          In viewing the totality of appellant’s interrogation, we determine that the trial
court did not err in concluding that appellant’s confession was voluntary.


 
Appellant’s inquiries as to what charges were being brought against him did go
unanswered, but, as the trial court found, the officers specifically told appellant that
they were investigating a capital murder. Officers’ misrepresentations that witnesses,
fingerprints, and video linked appellant to the crime merely related to his connection
to the crime and were not the type of deception that likely causes an involuntary
confession. See Green, 934 S.W.2d at 100; see also Rodriquez v. State, 934 S.W.2d
881, 890 (Tex. App.—Waco 1996, no pet.). Similarly, any promises made that
appellant “had his whole life ahead of him” or relating to appellant’s drug use during
the crime were not of such an influential nature that would cause appellant to speak
untruthfully. Martinez v. State, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004).
          We overrule appellant’s third issue.
Failure to Bring Accused Before Magistrate
          We interpret appellant’s fourth issue to be that the trial court erred by not
suppressing his confession because he was not brought before a neutral and detached
magistrate prior to being interrogated by the police.
          Article 15.17 of the Code of Criminal Procedure requires that the person
arrested be brought before a neutral and detached magistrate without unnecessary
delay, but not later than 48 hours after being arrested. Tex. Code Crim. Proc. Ann.
art 15.17(a) (Vernon Supp. 2007). The magistrate’s function is to. . . inform in clear language the person arrested . . . of the accusation
against him and of any affidavit filed therewith, of his right to retain
counsel, of his right to remain silent, of his right to have an attorney
present during any interview with peace officers or attorneys
representing the state, of his right to terminate the interview at any time,
and of his right to have an examining trial. . . . The magistrate shall also
inform the person arrested that he is not required to make a statement
and that any statement made by him may be used against him.

Id. 
          The evidence shows that appellant was brought before a magistrate within 24
hours of being arrested. Following the suppression hearing, the trial court ruled that
there was no unnecessary delay in bringing appellant before the magistrate and denied
his motion on this point. 
          It is the defendant’s burden to demonstrate (1) that a delay was unnecessary
and (2) the existence of a causal connection between the confession and the failure
to take him before a magistrate without unnecessary delay. Bonner v. State, 804
S.W.2d 580, 582 (Tex. App.—Houston [1st Dist.] 1991, pet. ref’d). On appeal,
appellant does not assert any reason for why the officers’ delay in bringing him before
a magistrate was unnecessary. However, even assuming that the delay was
unnecessary, we hold that he has not shown a causal connection between the delay
and his confession. 
          Appellant contends that it is apparent from the interrogation that he did not
understand the nature of the charges brought against him. He argues that a magistrate
would have informed him of the actual charges he faced and would have clearly
informed him of his rights. According to appellant, this would have prevented his
confession, because he would have been appointed an attorney who would not have
allowed him to be subjected to the lengthy and intense interrogation.



          We conclude that appellant has failed to establish a causal connection between
his confession and the unnecessary delay in his being brought before a magistrate. 
He has provided no support for his conclusory statement that his confusion as to what
charges he faced led to his confession. Additionally, a confession that is obtained
prior to the accused being taken in front of a magistrate is valid as long as his article
38.22


 warnings had been read to him before the statement was taken. See Curry v.
State, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995) (citing Boyd v. State, 811 S.W.2d
105, 125 (Tex. Crim. App. 1991); Shadrick v. State, 491 S.W.2d 681, 683–84 (Tex.
Crim. App. 1973)). Here, the interrogation video shows that, before any statement
was made, the officers read appellant his rights and appellant indicated that he
understood each one. Therefore, we hold that the trial court did not err in denying
appellant’s motion to suppress his confession due to the officers’ delay in bringing
him before a magistrate. 
          We overrule appellant’s fourth issue.
Procedural Due Process
          In his fifth issue, appellant contends that the trial court erred in not permitting
the jury assess his punishment. Appellant’s counsel did not file a motion requesting
the jury assess punishment until after the jury had retired to deliberate on guilt or
innocence. The trial court denied this request as untimely filed. Appellant argues
that this denial violated his right to procedural due process under the United States
and Texas Constitutions because he has a right to elect that the jury assess
punishment for the non-capital offense of aggravated robbery. See Tex. Code Crim.
Proc. Ann. art. 37.07, § 2(b) (Vernon 2006).


 Specifically, appellant appears to
assert that, because he was charged with capital murder and the State sought the death
penalty, he was precluded from making a pre-trial election as to punishment, because
the jury is required by statute to either sentence him to death or life imprisonment
without parole. See id. art. 37.071, § 2 (Vernon 2006). We disagree.
          Procedural due process questions are traditionally examined in two steps: (1)
whether there exists a liberty or property interest which has been interfered with by
the State, and (2) whether sufficient procedural safeguards are employed to assure the
deprivation of that interest is not arbitrary. Ex parte Robinson, 116 S.W.3d 794, 796
(Tex. Crim. App. 2003). Procedural due process ensures that government decisions
will be made with sufficient procedural safeguards. See Mathews v. Eldridge, 424
U.S. 319, 332, 96 S. Ct. 893, 901 (1976).
          Under article 37.07, section 2(b), punishment assessment is the role of the trial
court, unless, among other exceptions, the defendant elected for jury punishment in
writing before the commencement of voir dire. Tex. Code Crim. Proc. Ann. art.
37.07, § 2(b). After that time, the defendant may change his election as to who
assesses punishment only with the State’s consent. Id. Thus, the legislature has
afforded defendants a right to jury punishment if they file a pre-trial election asking
for it. Appellant did not file any such election.
          Appellant cites no caselaw to support that the trial court interfered with his
right to jury punishment. In light of his failure to file a pre-trial election, we hold that
appellant was not denied sufficient procedural safeguards.
          We overrule appellant’s fifth issue.Ineffective Assistance of Counsel
          In his sixth and final issue, appellant asserts that he received ineffective
assistance of counsel at trial because his counsel (1) argued to the jury that he was
guilty of aggravated robbery and (2) failed to file a pre-trial election for the jury to
assess punishment. 
Standard of Review
          To be entitled to a new trial based on a claim for ineffective assistance of
counsel, a defendant must demonstrate on appeal that (1) counsel’s performance was
so deficient that he was not functioning as acceptable counsel under the Sixth
Amendment, and (2) there is a reasonable probability that, but for counsel’s error, the
result of the proceedings would have been different. Strickland v. Washington, 466
U.S. 668, 687, 694, 104 S. Ct. 2052, 2064, 2068 (1984). Appellant has the burden
to establish both prongs of the Strickland test by a preponderance of the evidence. 
See Jackson v. State, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998).
          Because there is a strong presumption that trial counsel’s conduct fell within
the wide range of reasonable professional assistance, appellant must overcome the
presumption that counsel’s action or inaction might be considered “sound trial
strategy” under the circumstances. See Strickland, 466 U.S. at 689, 104 S. Ct. at
2065. Any allegation of ineffectiveness must be firmly founded in the record, which
must demonstrate affirmatively the alleged ineffectiveness. Thompson v. State, 9
S.W.3d 808, 813 (Tex. Crim. App. 1999). Generally, the record on appeal is
undeveloped, and a silent record that provides no explanation for counsel’s actions
will not overcome the strong presumption of reasonable assistance. Rylander v. State,
101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003). When the record is silent
regarding counsel’s reasoning or strategy, we may not speculate to find trial counsel
ineffective. Gamble v. State, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.]
1996, no pet.). However, it is not speculation to hold counsel ineffective if a silent
record clearly indicates that no reasonable attorney could have made such trial
decisions. See Weeks v. State, 894 S.W.2d 390, 392 (Tex. App.—Dallas 1994, no
pet.) (citing Vasquez v. State, 830 S.W.2d 948, 950–51 (Tex. Crim. App. 1992) (per
curiam)). Therefore, in rare cases, the record can be sufficient to prove that counsel’s
performance was deficient, despite the absence of affirmative evidence of counsel’s
reasoning or strategy. See Robinson v. State, 16 S.W.3d 808, 813 n.7 (Tex. Crim.
App. 2000).
Analysis
          In the first part of his ineffective assistance claim, appellant contends that his
trial counsel not only requested and received an instruction on aggravated robbery,
but also asked the jury to find him guilty of aggravated robbery. Appellant asserts
that this amounted to deficient representation because there could be no reasonable
strategy for asking the jury to convict appellant of an offense for which there was
insufficient evidence to support. However, attempting to persuade the jury to convict
the defendant of a lesser included offense can be considered a reasonable trial
strategy, particularly where the evidence supports the charged offense. See Hathorn
v. State, 848 S.W.2d 101, 118 (Tex. Crim. App. 1992). In light of appellant’s
extrajudicial confession, we refuse to hold that no reasonable attorney could have
argued for the jury to convict on the lesser included offense. 
          Appellant also argues that counsel was ineffective for failing to file timely an
election for the jury to assess punishment. He contends that the record reveals that
no strategic decision was involved because counsel admitted that they failed to file
a timely election. We disagree. 
          In this case, the record does not establish that the absence of a pre-trial election
was not based on a strategic decision. Instead, the record only shows that, after the
jury sent a note during deliberation asking about aggravated robbery, counsel
determined that no election had been filed and spoke with appellant, who indicated
that he wanted jury punishment. Because the record is silent as to why no pre-trial
election was filed, and we cannot say that no reasonable attorney would have failed
to file such an election, we may not speculate to find trial counsel ineffective. 
Gamble, 916 S.W.2d at 93; Weeks, 894 S.W.2d at 392. 
          We conclude that appellant has failed to overcome the presumption of
reasonable assistance on direct appeal, because the record is silent as to counsel’s
strategy and appellant has failed to show that no reasonable attorney could have made
similar decisions. Accordingly, we decline to address the merits of appellant’s
ineffective assistance allegations. See Thompson, 9 S.W.3d at 814.
          We overrule appellant’s sixth issue.
 
 
 
Conclusion
          We affirm the trial court’s judgment.
 
                                                                         George C. Hanks, Jr.
                                                                        Justice
 
Panel consists of Justices Nuchia, Hanks, and Higley.