# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-20-00087-CR

**The State of Texas, Appellant**

**v.**

**Johnny Joe Serna, Appellee**

---

**FROM THE 207TH DISTRICT COURT OF COMAL COUNTY**
**NO. CR2019-087, THE HONORABLE DIB WALDRIP, JUDGE PRESIDING**

---

## O P I N I O N

Johnny Joe Serna was charged with the third-degree felony of unlawful possession of a firearm by a felon, *see* Tex. Penal Code § 46.04(a), (e), and the State alleged habitual-offender enhancement paragraphs, *see id.* § 12.42(d). After a pre-trial hearing, the trial court suppressed evidence of a handgun seized from a locked car parked in a home's carport, and the State appeals, *see* Tex. Code Crim. Proc. art. 44.01(a)(5). The State argues on appeal that the court made errors of law because (1) Serna lacked Fourth Amendment standing to contest the seizure because he lacked any legitimate expectation of privacy in the place where the car was parked and (2) the plain-view and automobile exceptions to the Fourth Amendment's default warrant requirement allowed the seizure. We affirm because Serna had a legitimate expectation of privacy in the home and its curtilage, where the locked car was parked, and the officers did not have the right to be within the curtilage when they seized the handgun.

## BACKGROUND

Officers obtained a warrant to arrest Serna for "credit/debit card abuse." They learned his current address, which was a "residence at which [he] frequently stayed," and confirmed it with his parole officer. When they approached the home, they saw him sitting in the driver's seat of a car parked "beneath [a] carport" abutting the home. He was "partially blocked in the driveway" by other vehicles parked behind him. The carport was "directly under a single roof covering both the house and the carport," which meant that the car "was physically and squarely beneath the umbrella of the home." The car was also "within a few steps of and a very short distance to a doorway of the" home. Just before the officers approached, Serna "had driven the vehicle forward a short distance within the driveway and beneath the carport" to clear the path to the doorway for a family member.

The officers asked Serna if he had any guns, which he denied, and to talk outside the car. He got out but locked the car behind him. He was holding a dog, so he said that he needed to put it inside the home and did so "[w]ithout asking." The officers followed him inside, where he "requested that he be allowed to secure [the] dog in his room." "[T]he officers followed and escorted Serna into his room," where "Serna, stalling, rummaged around his room and through his pockets." He, "[u]ncooperative, . . . created a diversion, i.e., likely secreting the keys to the" car. (Emphasis removed.) But he then went back outside the home at the officers' request, and they put him in handcuffs while they all stood next to the car. He asked to call his mother-in-law because she owned the home and needed to come lock it because he did not have a key.

The officers "walked Serna to the street past [the] two other cars in the driveway to confirm and verify the warrant." There they let him call his mother-in-law. "[O]ne of the officers then walked back to the passenger side of the" car that Serna had been in and saw a handgun

2

in plain view. The officers asked Serna if they could search the car, but he refused. Serna's mother-in-law soon arrived, and she "attempted, unsuccessfully, to assist law enforcement locating keys to the" car. With the car still locked and "[w]ithout a search warrant, law enforcement forcibly, but without damage, entered the locked [car] and retrieved the handgun from beneath the front passenger seat."

The State indicted Serna for unlawfully possessing a handgun. He moved to suppress "any and all evidence seized from inside" the car, and the trial court held an evidentiary hearing. The only witness who testified was one of the officers who arrested Serna and seized the handgun, and the court admitted as exhibits a second officer's bodycam recording of the events surrounding the arrest and two pictures of the handgun. The court ultimately suppressed the handgun seized from the locked car because the seizure was warrantless and the car was parked within the home's curtilage. The State now appeals the trial court's suppression order.

## APPLICABLE LAW OF SEIZURES UNDER THE FOURTH AMENDMENT

The Fourth Amendment to the Constitution of the United States assures the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Under the Amendment, officers generally must obtain a warrant before seizing items unless an exception to the default warrant requirement applies. *See Collins v. Virginia*, 138 S. Ct. 1663, 1669 (2018); *State v. Villarreal*, 475 S.W.3d 784, 796 (Tex. Crim. App. 2014); *State v. Pena*, 581 S.W.3d 467, 480–81 (Tex. App.—Austin 2019, pet. ref'd). "[W]hen it comes to the Fourth Amendment, the home is first among equals. At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable

3

governmental intrusion.'"  *Collins*, 138 S. Ct. at 1670 (internal quotation and citation omitted) (quoting *Florida v. Jardines,* 569 U.S. 1, 6 (2013)).

"[T]he area 'immediately surrounding and associated with the home'"—its "curtilage"—is "part of the home itself for Fourth Amendment purposes."  *Id.* (internal quotations omitted) (quoting *Jardines*, 569 U.S. at 6).  "The protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened."  *Id.* (internal quotation omitted) (quoting *California v. Ciraolo,* 476 U.S. 207, 212–13 (1986)).  "When a law enforcement officer physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has occurred.  Such conduct thus is presumptively unreasonable absent a warrant."  *Id.* (internal citation omitted).

For a warrantless seizure, the State bears the burden of proving an exception to the default warrant requirement.  *See State v. Martinez*, 569 S.W.3d 621, 624 (Tex. Crim. App. 2019). Two such exceptions are the plain-view exception and the automobile exception.  The plain-view exception allows seizure of an object only when all three of these conditions are met: (1) "officials must lawfully be where the object can be 'plainly viewed,'" (2) "the 'incriminating character' of the object in plain view must be '"immediately apparent"' to the officials," and (3) "the officials must have the right to access the object."  *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009) (quoting *Horton v. California*, 496 U.S. 128, 136–37 (1990)); *accord Collins*, 138 S. Ct. at 1672 (quoting *Horton*, 496 U.S. at 136–37).

"Under the automobile exception, law enforcement officials may conduct a warrantless search of a vehicle if it is readily mobile and there is probable cause to believe that it contains contraband."  *Pena*, 581 S.W.3d at 481 (internal quotation omitted) (quoting *Keehn*,

4

279 S.W.3d at 335). But despite the automobile exception, when an officer wishes to seize an item from an automobile parked within the curtilage of a home, the officer must obtain a warrant or sufficient permission or another recognized exception must apply for the seizure or it is unlawful. *See Collins*, 138 S. Ct. at 1668, 1675 ("This case presents the question whether the automobile exception to the Fourth Amendment permits a police officer, uninvited and without a warrant, to enter the curtilage of a home in order to search a vehicle parked therein. It does not. . . . [T]he automobile exception does not permit an officer without a warrant to enter a home or its curtilage in order to search a vehicle therein.").

**STANDARD OF REVIEW**

We review a suppression order under a bifurcated standard of review. *Pena*, 581 S.W.3d at 474 (quoting *State v. Cuong Phu Le*, 463 S.W.3d 872, 876 (Tex. Crim. App. 2015)). We give almost total deference to (i) the trial court's findings of historical facts if those findings are supported by the record and (ii) its application of the law to questions of fact, and to mixed questions of fact and law, if the application depended on evaluating witness credibility or demeanor. *See State v. Granville*, 423 S.W.3d 399, 404 (Tex. Crim. App. 2014); *Pena*, 581 S.W.3d at 474 (quoting *Cuong Phu Le*, 463 S.W.3d at 876; *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010)). "If the trial court makes a finding of fact that is derived from video evidence admitted at a suppression hearing, that finding 'is still reviewed under a deferential standard.'" *Pena*, 581 S.W.3d at 474 (quoting *Carter v. State*, 309 S.W.3d 31, 40 (Tex. Crim. App. 2010)). By contrast, we review *de novo* the court's legal conclusions and the rest of its application of the law to the facts. *See id.* (quoting *Cuong Phu Le*, 463 S.W.3d at 876). We view the record in the light most favorable to the trial court's decision. *Granville*, 423 S.W.3d at 404; *Pena*, 581 S.W.3d

at 474 (quoting *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014)). We must affirm the trial court's order "if it is correct under any theory of law applicable to the case regardless of whether the trial court based its ruling on that theory, but 'a trial court's ruling will not be reversed based on a legal theory that the complaining party did not present to it.'" *Pena*, 581 S.W.3d at 474 (quoting *Story*, 445 S.W.3d at 732); *accord Hailey v. State*, 87 S.W.3d 118, 122 (Tex. Crim. App. 2002). An exception to this requirement to present a legal theory first to the trial court is Fourth Amendment "standing," which the State may raise for the first time on appeal. *See State v. Klima*, 934 S.W.2d 109, 110–11 (Tex. Crim. App. 1996).

## FOURTH AMENDMENT STANDING

The State does not argue that any of the findings of fact were incorrect or unsupported. The State argues only that the court incorrectly applied the law to the facts. Several of the arguments center on Serna's standing to contest the seizure of the handgun. Fourth Amendment "standing" refers to "the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search." *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018). Even if not challenged in the trial court, standing may be challenged by the State on appeal because the suppression movant's interest in the place searched is part of the merits of the motion. *Klima*, 934 S.W.2d at 110–11.

Examining standing "requires examination of whether the person claiming the constitutional violation had a 'legitimate expectation of privacy in the premises' searched." *Byrd*, 138 S. Ct. at 1526 (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)). Proving that legitimate expectation is the suppression movant's burden. *State v. Betts*, 397 S.W.3d 198, 203 (Tex. Crim. App. 2013). "He must show that he had a subjective expectation of privacy in the place invaded

6

and that society is prepared to recognize that expectation of privacy as objectively reasonable."

*Id.* When considering whether an objectively reasonable expectation of privacy has been proven,

> we examine the totality of the circumstances surrounding the search, including
>
> > (1) whether the accused had a property or possessory interest in the place invaded;
> >
> > (2) whether he was legitimately in the place invaded;
> >
> > (3) whether he had complete dominion or control and the right to exclude others;
> >
> > (4) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy;
> >
> > (5) whether he put the place to some private use; and
> >
> > (6) whether his claim of privacy is consistent with historical notions of privacy.

*Id.* at 203–04 (formatting altered) (quoting *Granados v. State*, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002)). "This is a non-exhaustive list of factors, and no one factor is dispositive." *Id.* at 204. "Although we defer to the trial court's factual findings and view them in the light most favorable to the prevailing party, we review the legal issue of standing de novo." *Id.* (internal quotation omitted) (quoting *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004)).

The State here argues that Serna lacked standing because he did not have a legitimate expectation of privacy in the place where the handgun was seized—inside the locked car under the carport abutting the home. Although the trial court ruled that Serna had standing to challenge a seizure from the car, the State does not appear to contest that ruling. Its arguments instead center on the car's location in the carport. As to that location, the trial court also ruled that it was within the home's curtilage. *See Collins*, 138 S. Ct. at 1670–71. The State does not appear to contest that ruling either. The State argues that (1) Serna did not have a legitimate expectation

of privacy in the home, in whose curtilage the car was parked, because there was no evidence that he controlled it, exercised dominion over it, or had the right to exclude people from it[1] and, (2) even if he had such a legitimate expectation in the home, his expectation did not extend to the curtilage.

Relevant to the State's first position, the trial court found that Serna "frequently stayed" at the home, that he had his own room there, and that the home was "Serna's residence." These findings were supported by statements by Serna shown on the bodycam recording and by the officer's testimony that Serna could be located at that home when the officers were preparing to approach it to arrest him. In response, the State argues that Serna's mother-in-law is who owned the home, Serna did not have a key to it and had no other way to lock its door, and he stayed only in the one room when visiting. Despite these observations, we conclude that the trial court correctly ruled that Serna had a legitimate expectation of privacy in the home. Overnight guests have a legitimate expectation of privacy in their hosts' homes as if the home was their own, subject only to the hosts' permission. *See Minnesota v. Olson*, 495 U.S. 91, 96–100 (1990); *Betts*, 397 S.W.3d at 204; *Granados*, 85 S.W.3d at 223–24. The State does not dispute that Serna's mother-in-law allowed him to stay in the home overnight, and there is no evidence that she asked him to leave, *see, e.g.*, *Granados*, 85 S.W.3d at 226. Viewing the record in the light most favorable to the trial court's ruling, as we must, we conclude that the evidence supported a finding that Serna's

---

[1] The State's only other no-standing-in-the-home argument in its brief is that not even the homeowner could have contested "the *search* in the instant case" because the officers saw the handgun while standing in a path that any visitor to the home would travel to enter it through its carport door. (Emphasis added.) We consider this to be an argument about the plain-view exception instead of a standing argument, and, in any event, it addresses merely spotting the handgun and not also the entry into the locked car parked within the curtilage to seize the handgun. *See Kothe v. State*, 152 S.W.3d 54, 60 (Tex. Crim. App. 2004) ("In addressing standing, 'it is critical that the precise police conduct being objected to be properly identified, for this may itself turn out to be determinative on the standing issue.'"); *accord Emack v. State*, 354 S.W.3d 828, 836 (Tex. App.—Austin 2011, no pet.).

mother-in-law allowed him to stay in the home with no restriction on his privacy within it, thus supporting the conclusion that Serna could contest a seizure from the home.

The State introduced a new no-standing-in-the-home argument at oral argument. The State there argued that Serna's status as a parolee eliminated any expectations of privacy that he otherwise might enjoy, citing in support *United States v. Venson*, Criminal No. 07-364, 2009 WL 1565736 (W.D. Pa. June 3, 2009). But the State's new reliance on parolee status and *Venson* suffers from two problems.

First, although the State can raise standing arguments for the first time on appeal, an appellant's arguments on appeal are limited to those set forth in the appellant's brief and supported there by citations to authorities and to the record. *See* Tex. R. App. P. 38.1(i), 39.2. The State's brief lacks any argument that parolee status eliminated Serna's Fourth Amendment standing. And although the State may sometimes add new arguments on appeal post-brief, those instances arise when the State is the appellee because "preservation rules are intended to protect the trial court's judgment from reversal based on arguments never heard by the trial court." *See Spielbauer v. State*, 622 S.W.3d 314, 318–20 (Tex. Crim. App. 2021). Allowing the State to now argue that parolee status forecloses Serna's standing would violate that principle because the trial court was never asked to address that argument, nor did its suppression order address it. *See Kothe*, 152 S.W.3d at 60 ("The appellate court may raise the issue of standing on its own; it may analyze that issue as a part of the Fourth Amendment claim presented; or it may conclude that the State has forfeited that argument because it failed to raise it in the trial court."); *accord Coleman v. State*, 246 S.W.3d 76, 84 n.30 (Tex. Crim. App. 2008).

Second, *Venson*'s standing analysis involved evidence that our record lacks. The parolee defendant in *Venson* had expressly consented to any search of his person, property, and

9

residence as a condition of his parole. 2009 WL 1565736, at *2 n.1, 7. That condition led the court to conclude that the parolee defendant lacked standing to contest any search of any home in which he stayed as a guest. *See id.* at *7. But here, nothing in the findings addresses Serna's parole conditions, no testimony or exhibits admitted did either, and we must defer to the trial court's findings and view the record in the light most favorable to its ruling. Given these restrictions, we must conclude that Serna's privacy rights were not diminished like the *Venson* parolee defendant's were because there is no evidence of the conditions of Serna's parole. *See United States v. Grandberry*, 730 F.3d 968, 974–75 (9th Cir. 2013) (parolee had standing to contest search of home in which he was overnight guest despite his status as parolee (citing *Olson*, 495 U.S. at 96–97, and discussing *Samson v. California*, 547 U.S. 843 (2006))); *see also United States v. Walton*, 763 F.3d 655, 660–61 (7th Cir. 2014) (similarly holding that parolee had standing to contest search of his rental car, even when he was then in violation of his parole conditions, and also discussing *Samson*); *United States v. Hill*, 776 F.3d 243, 249 (4th Cir. 2015) ("[L]aw enforcement officers generally may not search the home of an individual on supervised release who is not subject to a warrantless search condition unless they have a warrant supported by probable cause."); *cf. Samson v. California*, 547 U.S. 843, 850–51 (2006) (express condition of defendant's parole, found in document defendant signed, that defendant must submit to suspicion-less searches at any time helped make search reasonable (citing *United States v. Knights*, 534 U.S. 112, 119–20 (2001))).

Relevant to the State's second standing position—that privacy interests in a home do not extend fully to the home's curtilage—legitimate expectations of privacy in a home do indeed extend so far. The Supreme Court of the United States has said that curtilage is "part of the home itself for Fourth Amendment purposes," *Collins*, 138 S. Ct. at 1670 (internal quotation

10

omitted) (quoting *Jardines*, 569 U.S. at 6), and that it "enjoys protection as part of the home itself," *Jardines*, 569 U.S. at 6. *See also Oliver v. United States*, 466 U.S. 170, 180 (1984) ("[Blackstone's] distinction implies that only the curtilage, not the neighboring open fields, warrants the Fourth Amendment protections that attach to the home. At common law, the curtilage is the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life,' and therefore has been considered part of [the] home itself for Fourth Amendment purposes. Thus, courts have extended Fourth Amendment protection to the curtilage; and they have defined the curtilage, as did the common law, by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." (internal citation omitted)). Specifically as relevant here, "So long as it is curtilage, a parking patio or carport into which an officer can see from the street is no less entitled to protection from trespass and a warrantless search than a fully enclosed garage." *Collins*, 138 S. Ct. at 1675.

Texas courts agree, having said that a home's curtilage enjoys the same level of Fourth Amendment protections that the home enjoys.[2] *See Sayers v. State*, 433 S.W.3d 667, 674 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Tijerina v. State*, 334 S.W.3d 825, 833 (Tex. App.—Amarillo 2011, pet. ref'd); *Matthews v. State*, 165 S.W.3d 104, 112 (Tex. App.—Fort Worth 2005, no pet.); *Rosalez v. State*, 875 S.W.2d 705, 713 (Tex. App.—Dallas 1993, pet.

---

[2] This Court once ruled similarly, in a nonprecedential opinion. *See State v. Hancock*, Nos. 03-98-00634-CR, 03-98-00672-CR, 03-98-00697-CR, 2000 WL 64061, at *10 (Tex. App.—Austin Jan. 27, 2000, no pet.) (op., not designated for publication) (Onion, P.J., Ct. of Crim. App., retired) ("The curtilage is entitled to the same Fourth Amendment protection from unreasonable searches that is afforded the home itself." (citing *Oliver v. United States*, 466 U.S. 170, 180 (1984); *Moss v. State*, 878 S.W.2d 632, 643 (Tex. App.—San Antonio 1994, pet. ref'd); *Rosalez v. State*, 875 S.W.2d 705, 713 (Tex. App.—Dallas 1993, pet. ref'd))).

ref'd); *see also Bower v. State*, 769 S.W.2d 887, 896 (Tex. Crim. App. 1989) (plurality op.), *overruled in part on other grounds by Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991) ("Curtilage . . . warrants the same Fourth Amendment protections that attach to the home."); *Gonzalez v. State*, 588 S.W.2d 355, 360 (Tex. Crim. App. [Panel Op.] 1979) ("The initial search by the wardens involved the back yard at appellant's house. It has been held that the private property immediately adjacent to a home is entitled to the same protection against unreasonable search and seizure as the home itself."). Because of this equivalence between home and curtilage, Serna's legitimate expectation of privacy in the home, correctly concluded by the trial court, fully extends to the home's curtilage.[3]

But even were this not so, the record supports the trial court's ruling that Serna enjoyed a legitimate expectation of privacy in the home's curtilage. There was evidence under the factors mentioned in *Betts*. *See* 397 S.W.3d at 203–04. His mother-in-law allowed him to be at the home, and, not long before the officers approached, he had moved the car forward in the driveway beneath the carport to clear the path to the door to the home. He parked the car near that door, locked the car when he got out of it, and expressed the need to lock the home to keep it private. All this supports the trial court's ruling that Serna had a legitimate expectation of privacy in both the home and its curtilage. *See id.*; *see also id.* at 204–05 & n.2 (guest had legitimate

---

[3] For these reasons, we are not persuaded by the State's reliance on *Meridyth v. State*, 163 S.W.3d 305, 309–10 (Tex. App.—El Paso 2005, no pet.). The defendant there contested a search of a barn on land that his brother leased and on which the defendant was his brother's guest. *Id.* at 308–09. The items seized from the defendant were "in his possession" or "with him" when the search began, *id.* at 309–10, distinguishing them from the handgun here. And while the court in *Meridyth* concluded that guests do not enjoy a legitimate expectation of privacy in the curtilage of their hosts' homes if the guest does not control or exercise dominion over the curtilage or have the "right to exclude others from those premises," *see id.* at 310, the record here supports Serna's right to exclude. He moved the car beneath the carport, locked it, was allowed in the home as a frequent overnight guest, and expressed the need to keep the home locked so that it would remain private.

12

expectation of privacy in house and its backyard because owner allowed guest to be at house and to keep belongings in backyard, akin to "bailment" of those locations to guest; backyard was enclosed; and guest used backyard for purposes common to private use of backyards).

In sum, we hold that the trial court properly concluded that Serna had standing to contest the seizure of the handgun from the car, which was parked within the home's curtilage.

## EXCEPTIONS TO THE DEFAULT WARRANT REQUIREMENT

Because Serna had standing to contest the seizure and because the seizure was warrantless, we review the State's arguments about exceptions to the default warrant requirement, on which the State bore the burden of proof. *See Martinez*, 569 S.W.3d at 624. In the trial court and again on appeal, the State argues for the plain-view and automobile exceptions.[4]

Serna focuses on the plain-view exception's third condition—that the officers must have the right to access the object that they saw in plain view. *See Collins*, 138 S. Ct. at 1672; *Keehn*, 279 S.W.3d at 334. In response, the State makes two arguments. First, it argues that the officers had a legal right to be where they were standing when one of them saw the handgun in plain view. But as Serna rightly notes, this argument concerns not the third condition but the first—that the officers "must lawfully be where the object can be 'plainly viewed.'" *See Keehn*, 279 S.W.3d at 334 (quoting *Horton*, 496 U.S. at 136); *see also Collins*, 138 S. Ct. at 1675 ("The ability to observe inside curtilage from a lawful vantage point is not the same as the right to enter

---

[4] In its appellate brief, the State also alludes to consent by Serna's mother-in-law to a seizure from the curtilage. But the State did not present to the trial court the legal theory of the mother-in-law's consent to seize items from the curtilage, so we may not reverse the trial court's order under that legal theory. *See State v. Pena*, 581 S.W.3d 467, 474 (Tex. App.—Austin 2019, pet. ref'd) (quoting *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014)).

curtilage without a warrant for the purpose of conducting a search to obtain information not otherwise accessible.").

Second, the State argues that the warrant to arrest Serna supplied the officers with the right to access the handgun. That right turns on the officers' right to be within the curtilage. *See Collins*, 138 S. Ct. at 1672 ("[S]earching a vehicle parked in the curtilage involves not only the invasion of the Fourth Amendment interest in the vehicle but also an invasion of the sanctity of the curtilage."); *Jardines*, 569 U.S. at 9 n.3 ("The dissent would let the police do whatever they want by way of gathering evidence so long as they stay on the base-path, to use a baseball analogy—so long as they 'stick to the path that is typically used to approach a front door, such as a paved walkway.' From that vantage point they can presumably peer into the house through binoculars with impunity. That is not the law, as even the State concedes."). To evaluate the State's argument, understanding the timeline here is crucial. The trial court found the following sequence of events:

- Serna and the officers left the home to go back outside;

- the officers handcuffed him while standing next to the car in the carport;

- around that same time, and despite an officer's testimony to the contrary, the bodycam video suggested that the officers had not yet noticed the handgun[5];

- they "walked Serna to the street past two other cars in the driveway to confirm and verify the warrant";

- "one of the officers then walked back to the passenger side of the" car and saw the handgun in plain view;

- Serna refused to consent to a search of the car;

---

[5] The trial court said that this finding depended on weighing the testifying officer's credibility against the bodycam recording. We owe credibility-based findings deference.

- his mother-in-law unsuccessfully looked for a way to unlock the car;

- the officers forcibly entered the car (without damaging it); and

- they seized the handgun without a warrant.

Serna argues, and the trial court impliedly found, that the officers left the curtilage when walking him to the street. He also argues, and the trial court impliedly concluded, that the officers' right to be within the curtilage ceased after they left it with him in custody.

The default rule for searches and seizures overall—that they require a warrant unless a recognized exception applies—extends to the arrest context. Thus, save for exceptions like "search incident to arrest," "protective sweep," or "imminent destruction of evidence," none of which were raised here, arresting officers may not effect warrantless seizures beyond the execution of their arrest warrant. *See Chimel v. California*, 395 U.S. 752, 762–63 (1969) (contrasting justifications underlying exceptions for search incident to arrest and protective sweep with lack of similar justifications underlying default rule: "There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant."). The same default rule obtains when an arrestee was in a vehicle shortly before the arrest, with the added exception that officers may search the vehicle for evidence relevant to the crime of arrest.[6] *See Arizona v. Gant*, 556 U.S. 332, 343 (2009) ("[T]he *Chimel* rationale

---

[6] That added exception does not assist the State here because the crime of Serna's arrest was "credit/debit card abuse" and thus, in the absence of any evidence tying a handgun to Serna's alleged credit- or debit-card abuse or to officer safety, not a crime that could reasonably be related to a handgun. *See Arizona v. Gant*, 556 U.S. 332, 344 (2009) (upholding suppression of cocaine found in car's back seat in part because "Gant was arrested for driving with a suspended

15

authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search. . . . [W]e also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., joined by Ginsburg, J., concurring in the judgment))). Our Legislature reflected this default rule for arrests by providing that arrest warrants are "executed" once the defendant is arrested. *See* Tex. Code Crim. Proc. art. 15.26.

Even the cases that the State cites support this understanding. The State cites (1) *Payton v. New York*, 445 U.S. 573 (1980); (2) *United States v. Morehead*, 959 F.2d 1489 (10th Cir. 1992), *superseded on reh'g sub nom. United States v. Hill*, 971 F.2d 1461 (10th Cir. 1992) (en banc); and (3) *United States v. Reed*, No. 15-4032-CR-C-SRB, 2017 WL 4401647 (W.D. Mo. Sept. 8, 2017), *report and recommendation adopted*, No. 2:15-cr-04032-SRB-1, 2017 WL 4399278 (W.D. Mo. Oct. 3, 2017), *aff'd*, 921 F.3d 751 (8th Cir. 2019). Each opinion leaves room for the default rule that warrantless searches and seizures ensuing after an arrest must fall within a

---

license—an offense for which police could not expect to find evidence in the passenger compartment of Gant's car"); *United States v. Milan*, Criminal Action Nos. 08-760-1, 08-760-02, 2009 WL 2195321, at *13–14 (E.D. Pa. July 23, 2009) (upholding seizure of credit cards because crime of arrest was credit-card fraud but reasoning that same exception to warrant requirement would not similarly justify seizure of same arrestee's other business documents in his car); *People v. Newman*, 942 N.Y.S.2d 93, 99 (App. Div. 2012) ("Where a vehicle's occupants have been 'removed and patted down without incident [such that] any immediate threat to [the officer's] safety [has been] eliminated,' it is generally unlawful for the officer—in the absence of probable cause—to 'invade the interior of a stopped car'. However, if information gathered during a stop reveals that 1) there is a substantial likelihood of a weapon being present in the vehicle which 2) poses an 'actual and specific danger' to the officer's safety, the officer would be justified in engaging in a limited intrusion into the suspect's vehicle—'notwithstanding the suspect's inability to gain immediate access to that weapon.'" (internal citations omitted) (alterations in original)).

recognized Fourth Amendment exception to be lawful. *See Payton*, 445 U.S. at 603 ("Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the *limited authority to enter* a dwelling in which the suspect lives when there is reason to believe the suspect is within." (emphasis added)); *Morehead*, 959 F.2d at 1496–97 (officers obtained warrant to seize items that they had seen in plain view while within defendants' curtilage to arrest them); *Reed*, 2017 WL 4401647, at *3 ("[A] lawful arrest warrant carries with it the authority to enter the curtilage and even the residence of the person named in the warrant *in order to execute the warrant*." (emphasis added)).

Given all this, we agree with Serna and the trial court. Once the officers executed the arrest warrant by arresting Serna and after they left the home's curtilage with Serna handcuffed, their right to be within the curtilage ceased, and the default requirement that they obtain a warrant to seize any items from the curtilage applied. The plain-view exception did not allow the seizure of the handgun because the officers no longer had the right to access the object. *See Collins*, 138 S. Ct. at 1672; *Keehn*, 279 S.W.3d at 334; *see also Collins*, 138 S. Ct. at 1672 ("Had Officer Rhodes seen illegal drugs through the window of Collins' house, for example, assuming no other warrant exception applied, he could not have entered the house to seize them without first obtaining a warrant."); *id.* at 1673 n.3 ("[T]he ability visually to observe an area protected by the Fourth Amendment does not give officers the green light physically to intrude on it. It certainly does not permit an officer physically to intrude on curtilage." (internal citation omitted)). Were the State's position the law, homes' "front porch[es], side garden[s], or area[s] 'outside the front window,'" *see Collins*, 138 S. Ct. at 1667, could be traveled just as repeatedly and as freely by roving inspectors as public highways can be. But this alternative world is foreign to the Constitution,

17

which guards the sanctity of home and of private life by extending Fourth Amendment protection to curtilage. *See Ciraolo*, 476 U.S. at 212–13.

Finally, the State's position fares no better under the automobile exception because the exception cannot here "justif[y] the invasion of the curtilage." *See Collins*, 138 S. Ct. at 1671. *Collins*, which the trial court relied on, is clear:

> [A]n officer must have a lawful right of access to a vehicle in order to search it pursuant to the automobile exception. The automobile exception does not afford the necessary lawful right of access to search a vehicle parked within a home or its curtilage because it does not justify an intrusion on a person's separate and substantial Fourth Amendment interest in his home and curtilage.

*Id.* at 1672. "[T]he scope of the automobile exception extends no further than the automobile itself," and, the Court in *Collins* observed, "[n]othing in our case law . . . suggests that the automobile exception gives an officer the right to enter a home or its curtilage to access a vehicle without a warrant." *Id.* at 1671.

In all, neither of the exceptions to the default warrant requirement that the State raised allowed the officers to enter the curtilage to seize the handgun from the car. We thus hold that the trial court did not err by suppressing the handgun.

## CONCLUSION

We affirm the trial court's suppression order.

                                       _____

                                         Chari L. Kelly, Justice

Before Justices Baker, Kelly, and Smith

Affirmed

Filed:   November 17, 2021

Publish